# Western Union Telegraph Co. *v.* S. & N. Ala. R. R. Co.

## *Condemnation Proceedings.*

(Decided April 24, 1913.   Rehearing denied June 19, 1913.
62 South. 788.)

1. *Eminent Domain; Property Devoted to Public Use; Railroad Right of Way; Telegraphs.*—The provision of sections 239 and 242, Constitution 1901, and sections 3867 and 5817, Code 1907, considered, and it is held, where a railroad company has condemned a right of way of 100 feet in width over a specified route, and it appears that the use by the telegraph company of an unused portion of such right of way would not interfere with the railroad's use of such right of way, and that it was necessary to the telegraph company that its lines be constructed in the immediate vicinity of the railroad, it sufficiently appeared that there was an actual necessity for the condemnation of such portion of the right of way of the railroad to subserve the requirements of the telegraph company, and hence, to entitle the telegraph company to acquire such right of way by eminent domain under proper condemnation proceedings.

2. *Same; Application to Different Use; Actual.*—As used in the rule that land devoted to a public use may not be subjected to a different use by condemnation without actual necessity, the word "actual" means real, as distinguished from apparent, constructive or imputed necessity.

3. *Same; Specific.*—Under such rule, the word "specific" means "tending to specify or make particular, definite, limited or precise."

4. *Same; Extent of Right.*—Where one public service corporation seeks to condemn a part of the lands of a like corporation, the necessity for some of the land being shown, only so much as is actually needed can be condemned.

5. *Commerce; Interstate; Interference; Telegraphs; Railroads.*—Condemnation of an unused portion of the right of way of an interstate railroad for the maintenance of a telegraph line authorized by the statute and Constitution of this state, and the maintenance of such line in such a manner as not materially to interfere with the operation of a railroad is not an interference with interstate commerce, or an impairment of the efficiency of a post road of the United States, and is not therefore in conflict with the provisions of the United States statutes on that subject.

(Sayre, J., dissents.)

APPEAL from Birmingham City Court.
Heard before HON. C. C. NESMITH.

Condemnation proceedings by the Western Union Telegraph Company against the South & North Alabama Railroad Company. From a judgment denying the right of condemnation the petitioner appeals. Reversed and remanded.

GEORGE H. FEARSONS, E. K. CAMPBELL, W. C. FITTS, FORNEY JOHNSTON, and RUSHTON, WILLIAMS & CRENSHAW, for appellant. Under the circumstances shown by the petition, the right of way sought to be condemned is to be treated as one continuous tract of land. —*St. Louis v. Postal Co.*, 51 N. E. 388; *Houston, etc., Co. v. Postal Co.*, 45 S. W. 100. The question of what is a public use is a judicial question, and the application was properly filed under section 3861, Code 1907, without the allegations contemplated by section 3867. —Lewis on Eminent Domain, sec. 158, et seq. However, as the court's ruling was based on the provisions of section 3867, the same must be considered. The question whether or not the legislature has in fact provided for the condemnation or appropriation of particular kinds of property to or for a particular use or utility becomes a judicial question. *M. & G. R. R. Co. v. A. M. R. R. Co.*, 87 Ala. 508; 54 U. S. 71; 47 U. S. 507. Under the Constitution and Code provisions telegraph companies have a right to exercise power of eminent domain.—Secs. 23 and 239, Constitution 1901; Sec. 3884, Code 1907; *M. & O. R. R. Co. v. Postal T. Co.*, 120 Ala. 21; *Columbus W. W. Co. v. Long*, 21 Ala. 245. As to the necessity contemplated see Lewis on Eminent Domain, sec. 601; 1 Wood's Railway Law, sec. 22; *M. & G. R. R. Co. v. A. M. R. R. Co. supra;* 178 Ill. 485; 7 Cowan 606; 51 N. W. 904; 90 Pac. 665; 73 Pac. 670; 16 Ohio 390; 53 N. Y. 576; 57 Ark. 359; Ill Fed. 847; 92 Cal. 522. The law as laid down by these author-

ities is not changed in effect by the provisions of section 3867, Code 1907; *Postal T. Co. v. Oregon,* 23 Utah 474; 94 C. C. A. 663; 114 Fed. 787; *Jones v. N. O. & S. R. R. Co.,* 70 Ala. 228; *M. & W. R. R. Co. v. Fowl R. L. Co.,* 152 Ala. 320. The statute does not mean that there must be an actual necessity in the sense that the necessity must be absolute or paramount.—53 Ala. 21; 87 Ala. 523; 13 Ind. 69; 30 Ind. App. 660; 65 Pac. 739; 4 Wheat. 415; 1 Words & Phrases 151 and authorities supra; 58 C. C. 119. On the above authorities, it must be held that the condemnation would not interfere with interstate commerce, or the United States Post Roads.

H. L. STONE, GEORGE W. JONES, J. M. FOSTER, S. L. FIELDS, TILLMAN, BRADLEY & MORROW, and MALLORY & MALLORY, for appellee. After reviewing the statutes and Constitution now in force conferring power on the telegraph companies, organized under the laws of a foreign state, and conferring power of eminent domain thereon, and the statutes conferring power of eminent domain upon railroad companies, and the general statutes on the subject of eminent domain, counsel insist that all grants of such character must be strictly construed.—Lewis on Eminent Domain, sec 386; *M. & G. R. R. Co. v. Ala. Mid.,* 87 Ala. 501; *N. & O. D. B. & T. R. R. Co. v. Karcher,* 112 Ala. 679. The judicial decisions of this state on the subject of condemning property already devoted to a public use may be summarized as follows; 1st, property in actual use for public purposes is not subject to condemnation in Alabama, except by specific legislative authority; and 2nd, such property devoted or subjected to a public use but not in actual use may be condemned in the event and to the extent only that such property is reasonably requisite to the second public use, and will constitute

no material interference or obstruction of the prior public use.—*A. & C. R. R. Co. v. Jacksonville, etc.,* 82 Ala. 297; *M. & G. v. A. M. R. R. Co., supra; B. & A. R. R. Co. v. L. & N.,* 152 Ala. 422. Counsel insist that in view of the legislation of 1903, and the decision in the case of *M. & O. v. Pos. Tel. Co.,* 120 Ala. 21, that the subsequent statutes passed in 1903, revised the whole subject matter of the former statute and operated as a repeal of the former statutes, and that the law with respect to the power of telegraph companies to condemn the right of way of railroads must be governed by said enactments of 1903, and by section 3867, Code 1907;—*Lemay v. Walker,* 62 Ala. 39; *Cahal, et al. v. Citizens M. B. Assn.,* 61 Ala. 232; *Ogbourn v. Ogbourn,* 60 Ala. 616; *Scott v. Simmons,* 70 Ala. 352; 20 Wall. 590; 43 Atl. 889. It appears, therefore, not only from the terms of section 3867, Code 1907, but from the legislative history that property subjected to or devoted to a public use shall not be taken for another and different character of public use. There would be no field for operation of the statute if it be construed merely as applying to property in actual use. Authorities supra, and *Lehman-Durr v. Robinson,* 59 Ala. 219; 171 U. S. 171; 195 U. S. 540; 15 N. W. 684; 24 Atl. 709. Coming to the pleading, counsel insist that the petition did not state a case within the jurisdiction of the probate court.—15 Cyc. 810; *N. C. & St. L. v. Hobbs,* 120 Ala. 600; *Comm. Ct. v. Thompson,* 18 Ala 694, and the Alabama authorities cited supra. The petition did not show the requisite necessity.—Alabama authorities supra, and 58 C. C. A. 119; 24 Atl. 709; 79 N. W. 317; 9 Am. St. Rep. 142; 147 Ala. 393; 71 Ala. 571; 97 Ala. 414; 107 Ala. 331. The proceedings would amount to an interference with interstate commerce and with the post roads of the government.—Sec. 3964, U. S. Rev.

St.; *W. U. T. Co. v. Pennsylvania*, 195 U. S. 540, and cases cited.

DE GRAFFENRIED, J.—The South & North Alabama Railroad Company is a corporation organized under the laws of Alabama and operates a line of railway as a common carrier of freight and passengers from Decatur, Morgan county, Ala., to Montgomery, Ala. The right of way is 100 feet wide, more or less, along the course of said railway. For most of the way the railroad company has a single line of railway, the track being 4 feet and 8½ inches gauge, and along its entire way it possesses and uses such switches, turnouts, turntables, water tanks, depot buildings, and roundhouses as are necessary to the proper conduct of its business. The track is in the center, or near the center, of the right of way. At Decatur and at Montgomery it connects with the main line of the Louisville & Nashville Railroad Company, which, as a common carrier of freight and passengers, engaged in both interstate and intrastate traffic, operates a railway in Alabama and in several other states. In fact, the South & North Alabama Railroad Company is operated by the Louisville & Nashville Railroad Company as a part of its main line of railway between the cities of Louisville and Nashville, by way of Decatur, Birmingham, Montgomery and Mobile, Ala., to New Orleans, La. The South & North Alabama Railroad Company is, however, as above stated, an independent corporation, and it is, without question, the party against whom this proceeding should have been instituted.

About 40 years ago, under a contract with said South & North Alabama Railroad Company, the Western Union Telegraph Company erected a telegraph line upon the right of way of said railroad company at a distance

of not less than 30 feet from the outer edge of the track of said railway company at all places where it was practical to so erect the same; and its poles are so erected, and its telegraph lines so constructed and maintained, as not to obstruct or hinder travel on said railway and not to interfere with the use by the railroad company of its right of way in the conduct of its business as a servant of the public. The said contract of the Western Union Telegraph Company was, when this proceeding was instituted, about to expire, and by this proceeding the telegraph company seeks to condemn that part of the right of way of said railroad company on which its poles are now located and to maintain its telegraph wires thereon, "subject to such changes of location on such right of way as the necessities of the railroad company may require." "All of said lines of telegraph of your petitioner as aforesaid to be and continue as now located, maintained, and operated, upon and along all of the aforesaid rights of way of the said South & North Alabama Railroad Company, as the same is laid out and surveyed, except as to changes in location on said rights of way as the necessities of the said railroad company may from time to time require."

The petitioner offers to pay such reasonable and just compensation for the use of the part of the right of way sought to be condemned as may be decreed by the court and concludes its petition as follows: "And your petitioner further avers that the only land occupied by the poles of your petitioner on and along said right of way does not exceed a circular piece of land 18 inches in diameter for each pole now existing, or hereafter to be erected, six feet deep, in which the poles supporting cross-arms, wires, and appurtenances aforesaid are now placed, and does not include the whole but

a very small fractional part of the right of way aforesaid of said railroad company and at present in use by your petitioner under agreement with the defendant railroad company. The use of this land by your petitioner is a public use and is authorized by law, and the taking of this proceeding is necessary to such use, and the public use to which it is applied and is to be used is of actual necessity and is a more necessary public use than that to which it is appropriated by the railroad company and will not interfere with any public use to which such property is subjected or devoted."

Through the proceedings in this cause and the proceedings in two similar causes pending in this court, the Western Union Telegraph Company seeks to condemn, to its use, subject to the limitations above stated, for the purpose of maintaining a line of telegraph thereon, a part of the right of way of the entire Louisville & Nashville Railroad system in this state. The importance of this matter is therefore apparent. One of the real parties to this cause is one of the most important common carriers of freight and passengers engaged in interstate and intrastate business in the Union. The other party to this cause is one of the principal public service corporations engaged in the transmission and delivery of telegraphic messages in the United States. Both are servants of the federal government. Both are engaged in the performance of duties of grave moment to the people of this and other states. We are not therefore, on account of the importance of this cause, disposed to consider mere technical objections to the petition.

As we understand this matter, the court below was of the opinion that the telegraph company, by condemnation proceedings against the owners of private property between Decatur and Birmingham and Montgom-

ery, could acquire such rights of way through the state
to the various points in the state where its offices are
now located as would enable it to continue the opera-
tion of its system at all points where it now or can in
the future do business, and that therefore there could
be no "actual necessity for the specific land" sought to
be condemned.  For this reason, as we understand it,
the trial court was of the opinion that the telegraph
company was not entitled to condemn a part of the
railroad's right of way for its use for the purpose of
maintaining a telegraphic line thereon and, acting
upon that opinion, dismissed the original petition and
the amended petition.

1.   Section 23 of the present Constitution of the
state provides that: "The exercise of the right of em-
inent domain shall never be abridged nor so construed
as to prevent the Legislature from taking the property
and franchises of incorporated companies, and subject-
ing them to public use in the same manner in which the
property and franchises of individuals are taken and
subjected; but private property shall not be taken for
or applied to public use, unless just compensation be
first made therefor; nor shall private property be taken
for private use, or for the use of corporations, other
than municipal, without the consent of the owner:
Provided, however, the Legislature may by law secure
to persons or corporations the right of way over the
lands of other persons or corporations, and by general
laws provide for and regulate the exercise by persons
and corporations of the rights herein reserved," etc.

The above section of the Constitution was construed
by this court in *Mobile & Girard Railroad Company v.
Alabama Midland Railway Company,* 87 Ala. 501, 6
South. 404.

Section 242 of the present Constitution of the state provides that "all railroads and canals not constructed and used exclusively for private purposes, shall be public highways," etc.

Section 239 of the present Constitution provides that any association or corporation organized for the purpose, and any individual, shall have the right to construct and maintain lines of telegraph and telephones in this state and connect the same with other lines; and the Legislature shall, by general law of uniform operation provide reasonable regulations to give full effect to this section.

Section 5817 of the present Code provides that "the right of way is granted to any person or corporation having the right to construct telegraph or telephone lines within this state to construct them along the margin of public highways.'

The right of way above granted by the Legislature to a telegraph company to construct its lines along the margin of *public highways* cannot be lawfully exercised by a telegraph company, certainly in so far as the margin of a railroad company's right of way is concerned, in the absence of consent on the part of the railroad company, without condemnation proceedings. The right of way of a railroad company is its private property held by it for a public use, and the margin of its right of way cannot be subjected to such servitude (unless it consents thereto) without such condemnation proceedings. *Mobile & Ohio Ry. Co. v. Postal Tel. Cable Co.*, 120 Ala. 21, 24 South. 408.

Section 3964 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 2707) provides that all railroads or parts of railroads which are now or may hereafter be in operation are post roads.

Section 5263 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 3579) provides that "any telegraph company now organized, or which may hereafter be organized, under the laws of any state, shall have the right to construct, maintain, and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the military or post roads of the United States which have been or may hereafter be declared such by law," etc.

The Supreme Court of the United States has held that the above statute does not confer upon telegraph companies which have accepted the provisions of the statute the right of eminent domain, and that it does not confer upon such companies the right to build their lines upon the right of way of a railroad company or upon private property without the consent of the railroad company or the owner of such private property or unless the right of way over such property is condemned by such telegraph companies under the laws of the state where the property is situated. *Western Union Tel. Co. v. Penn. R. R. Co.,* 195 U. S. 540, 25 Sup. Ct. 133, 49 L. Ed. 312, 1 Ann. Cas. 517.

Section 3884 of the present Code provides that a telegraph or telephone company, incorporated under the laws of another state, proposing to extend connecting lines into this state, may acquire an easement for the uses and purposes of such connecting lines and may pursue the mode of proceeding prescribed in article 1 of chapter 79 of the Code (sections 3860-3887, inclusive, thereof) for that purpose.

Section 3867 of the Code provides that "if the property sought to be condemned, or any portion thereof or interest therein, has already been subjected or devoted to a public use, such land or portion thereof, or interest

therein, shall not be taken for another and different character of public use unless an actual necessity for the specific land or portion thereof or interest therein shall be alleged and proven, and unless it be alleged and proven that such other and different character of public use will not materially interfere with the public use to which such property is already subjected or devoted."

2. We have above set out the provisions of our state Constitution and the statutes of the state and of the United States which in our opinion in any way determine, qualify, or explain the rights of the parties to this litigation. The above section 242 of our Constitution providing that railroads not constructed and used exclusively for private purposes shall be public highways, and the above section 5817 of our Code which grants a right of way to telegraph companies to construct telegraph lines along the margins of public highways, are in perfect harmony with the above-quoted section 3964 of the Revised Statutes of the United States providing that all railroads are post roads, and with the above section 5263 of the Revised Statutes of the United States providing that telegraph companies shall have the right to construct, maintain, and operate telegraph lines along any of the post roads of the United States. This section of our Constitution and the above statutes, state and federal, have the same general purpose in view. "It is evident that both governments seek to foster the building of telegraph lines, one for national purposes and the other for local purposes." *Postal Tel. Cable Co. v. Oregon Short Line* (C. C.), 114 Fed. 787. The reason why the national government (and, as to that matter, the state government) is disposed to foster the building of telegraph lines is fully set forth by Mr. Chief Justice Waite in

*Pensacola Tel. Co. v. Western Union Tel. Co.,* 96 U. S. 1, 24 L. Ed. 708, and we need not repeat it. As telegraph lines are maintained upon poles and as they are, for that reason, peculiarly subject to breakage from storms and other atmospheric conditions, it is, of course, essential for their quick and economic repair and their proper and efficient maintenance that they should be constructed and maintained along highways. As the railroad furnishes the most economical and speedy method for the carriage of passengers and freight, the privilege of maintaining and operating a telegraph line upon a right of way of a railroad company is therefore necessarily a valuable one to the telegraph company possessing it.

In Alabama, as is well known, the general contour of the earth's surface is such that telegraph companies, in the speedy repair and proper maintenance of the lines of which the public is vitally interested, can construct their lines from point to point all over the state without coming in contact with the right of way of any railroad company, unless, indeed, it should be found to be necessary at some points to string wires across such rights of way upon poles not situated upon such rights of way. This being true, if the holding of the court below is correct, the right of a telegraph company to condemn any unused part of the right of way of a railroad company, although such condemnation may not materially affect the business of the railroad company or the value of its right of way, is, to all practical purposes, denied by section 3867 of the Code. The right of condemnation, under the terms of said section 3867, cannot be exercised when the use by the telegraph company of the right of way of a railroad company will *materially* interfere with the use by the railroad company of such right of way for its own purposes in

the operation of its business as a common carrier of freight and passengers. As this is true, and as in condemnation proceedings "the important thing is giving the owner compensation for what in fact is taken," as, under the allegations of the petitioner, the railroad company cannot be *materially* injured in the use of its property by the taking of the land sought to be condemned, and as the land sought to be condemned will be of material benefit to the telegraph company and the public whom it serves, a reasonable construction should be given to the statute to the end that the true purpose of the Legislature in bringing it into our Code shall not be defeated. Statutes delegating the permanent right of eminent domain must be strictly construed, "but not so literally construed as to defeat the manifest object of the Legislature." *Mobile & Girard Ry. Co. v. Ala. Midland Ry. Co.*, 87 Ala. 501, 6 South. 404.

3. As the above-named federal statutes confer no remedy upon telegraph companies to enforce the right to erect and maintain their lines along the rights of way of railroad companies as post roads, and as there is no legal right where there is no legal remedy, it is urged that it cannot be said that said federal statute confers upon telegraph companies such *right. Western Union Tel. Co. v. Penn. R. R. Co., supra.*

It is also urged by appellee that, although the state has *expressly* conferred upon telegraph companies the right of eminent domain, it cannot be asserted that, under our constitutional provisions and under our statutes declaring that railroads are highways and that telegraph companies shall have the right to erect and maintain telegraph lines along the margin of public highways, telegraph companies in this state, under our statutes covering the subject of eminent domain *as they*

*are now worded,* have the right, by condemnation proceedings, to subject to their use such unused part of a railroad's right of way as, without materially interfering with the business of the railroad as a common carrier of freight and passengers, it may need for its purposes as a servant of the public.

It cannot, however, be successfully denied that the above-quoted constitutional and statutory provisions of the state, and the above-quoted federal, statutes evidence the policy of the state and federal governments, out of respect to the public needs to which we have referred, to encourage the building of telegraph lines along all public highways when that can be done without material interference with the use of such highways for the purposes for which they were originally designed; and it also seems clear that the above-mentioned constitutional and statutory provisions of the state and federal governments, and the above-named decisions construing them, certainly illustrate the environments of our Legislature when section 3867 of the Code was enacted into law, and that they shed much light on the legislative purpose when it called that statute into existence. Certainly at the time of the passage of that act the telegraph company possessed the power which in this proceeding it seeks to exercise. *Mobile & Ohio Ry. Co. v. Postal Tel. Cable Co., supra.*

The only question, then, is: Has section 3867 wrought such a change in our law upon the subject now under consideration as that telegraph companies do not *now* possess substantially the same rights which this court declared they possessed, under our former Codes, in said *Mobile & Ohio Ry. Co. Case, supra?*

4. So far as the question of vital importance is concerned, it may be said that the Codes of 1876, 1886, and 1896, in so far as they treat of the subject of em-

inent domain, are substantially identical, and that, except as hereinafter noted, the provisions of the Code of 1907 on that subject are the same as those of said previous Codes. It may also be said that on the subject of eminent domain our present constitutional provisions are the same as were contained in the Constitution which prevailed as our fundamental law when the Codes of 1876, 1886, and 1896 were in operation.

In the case of *East & West Railroad Co. v. E. T. V. & G. Ry. Co.*, 75 Ala. 275, this court, through Brickell, C. J., said: "The right of the defendant corporation to take the lands, if necessary to the construction of its railway, by appropriate judicial proceedings, upon making just compensation, if they prove eventually to be the property of the defendant corporation, cannot be doubted. The property and franchises of a corporation may be taken for public uses equally with the property of the citizen. *A. & F. Ry. Co. v. Kennedy*, 39 Ala. 307. And now the Constitution forbids the abridgment in this respect of the right of eminent domain."

In the case of *Anniston & Cin. Ry. Co. v. Jacksonville, G. & A. Ry.*, 82 Ala. 300, 2 South., 711, this court, through Stone, C. J., said: "Lands once taken for a public use, pursuant to law, under the right of eminent domain, cannot, under the general laws, and without a special authority from the Legislature, be appropriated by proceedings in invitum to a different public use. It requires legislative authority for destroying a corporate franchise or corporate right by merging them in another, deemed more beneficial to the public. * * * It results from these principles that, if the complainant corporation had * * * acquired a specific right of way, the respondent corporation cannot divest that right under the proceedings instituted. It would re-

quire an express act of legislation to accomplish it, and then only on the prepayment of damages. * * * The complainant railroad company claims that it owns a right of way 100 feet in width. Common knowledge teaches us that 100 feet in width is ample space for two or more lateral tracks of railroad. It is nowhere shown that the respondent railroad company cannot obtain room for its tracks over complainant's right of way without obstructing complainant's free and ample use of the same. If such is the case, the probate court has jurisdiction to condemn *so much thereof as is necessary* for respondent's roadbed."

The plain holding of this court in the above case was that if it was *actually* necessary, in order that the respondent might get through Davis' Gap, for it to condemn a part of the complainant's right of way not in use by such complainant railroad company; and, if this condemnation could be had without *material* interference with the complainant's use of its own right of way, then that a condemnation of so much of that right of way, *and not more,* as was actually necessary for the purpose could be had under the provisions of the Code of 1876. This was the construction which, in that case, this court placed upon section 3580 of the Code of 1873, which section, so far as the question under consideration is concerned, has reappeared with no material changes in the Codes of 1886 and 1896 and is now section 3860 of the present Code. This same section (then section 3207 of the Code of 1886) was again construed by this court in the case of *Mobile & Girard Ry. Co. v. Ala. Midland Ry. Co.,* 87 Ala. 501, 6 South. 404, and in that case this court cited and approved and, as we understand the effect of the decision, enforced the doctrine announced in the *Anniston & Cin. Ry. Case, supra.* In the latter case this court held that

when a right of way is essential to a public service corporation, and there are *two possible routes,* one upon *unused* lands previously acquired by some other public service corporation for a public use, and the other upon private lands, then (the rights of the public being in equipose) when the *cost* of the right of way over such *private* lands and the *labor* and *expense* of putting such right of way in proper shape to be used by such second public service corporation are *not disproportionate* to the benefit likely to accrue therefrom, *then* the right of way over the *private* lands is *practicable,* and a right of way over the unused portion of the lands previously set apart to the first public use should be denied. When, however, the cost of *acquiring and constructing* the right of way, with its attendant circumstances, over the *private* lands is *so much greater* than would be the cost of constructing such right of way over the *unused* portion of lands previously acquired by the first public service corporation for public use as to *clearly outweigh and sensibly exceed* the injury which would proximately result to such first public service corporation, then, under such circumstances, so much of the unused portion of the lands belonging to such first public service corporation as is necessary to the actual occupancy and use of the second public service corporation may be condemned for its purposes, but not more.

In the case of *South & North Ala. Ry. Co. v. Highland Ave. & Belt Ry. Co.,* 119 Ala. 105, 24 South. 114, this court again recognized the above rule, saying that one public service corporation has a right, by condemnation proceedings, to acquire a portion of the unused right of way of another public service corporation "upon showing a reasonable necessity therefor, and that such taking would not destroy the usefulness of

the right of way as a franchise or so impair the capacity of the easement as to render it unsafe." The *necessity* to which the court was referring in the above case was an actual necessity for a specific portion of the right of way of a railroad company; and, while the court used the expression "reasonable necessity" as opposed to "absolute necessity," the necessity referred to was that actual necessity to which the court had referred and had defined in the *Mobile & Girard Ry. Case, supra.* In this connection we direct attention to the fact that, at the time of the rendition by this court of the above decision, there was nothing in any act of the Legislature placing lands dedicated to a public use which were sought to be condemned under our statutes of eminent domain upon a different footing from those occupied by lands belonging to private individuals, and that, when those decisions were rendered, the above-quoted provision of our Constitution, declaring that the right of eminent domain should never be "so construed as to prevent the Legislature from taking the property and franchises of incorporated companies and subjecting them to public use in the same manner in which the property and franchises of individuals are taken and subjected," was in full operation in this state. There can never be such a thing as the condemnation of a person's land to a public use unless there is a *necessity* therefor. The actual or supposed benefit to accrue to the public from the condemnation of the specific land sought to be condemned is the basic principle upon which the right of condemnation rests. This being true, this court, in the above-named decisions, following the example of nearly all, if not all, of the courts of last resort in the Union, declared that if the property sought to be condemned is not in actual use by the public service corporation owning it, and its con-

demnation to the *new* use will not materially interfere with the business of the first corporation, then, if the party seeking to condemn it actually needs the land, or an easement therein, for a right of way, and the expense of acquiring private lands for the needed purpose would be so entirely disproportionate to the actual inconvenience which would be suffered by the first public service corporation by reason of the loss of the land or the easement sought to be acquired (the rights of the public being in equipoise), then condemnation of so much of the land of such first public service corporation as is actually necessary to the second use may be had, provided such condemnation will not materially affect the franchise of the first public service corporation.

While in none of the above decisions were the words "actual necessity" used, in each of those cases the facts to which the words "necessity' or "reasonable necessity" were applied show that the words "actual necessity" were intended or were, in effect, used. "Just what the degree of necessity must be to justify the taking, it is difficult to say. One company cannot take part of the right of way of another merely because it is more convenient. It is largely a question of *practicability and expense,* of comparative *advantage* and *injury,* having regard always to the *interests of the public,* for whose benefit the *general authority is given* and the *particular* taking *proposed.* If the taking will unreasonably interfere with the business and duties of the first company, or if the second company shows no reasonable necessity for the use of the property sought, the taking will be denied under the general rule."—2 Lewis on Eminent Domain, p. 759, § 420.

This court, in the *Mobile & Girard Case, supra,* defined the word "necessity," as it is used in the above-

quoted rule, and declared when this necessity in such case did and when it did not exist.

The word "actual" is simply a word of emphasis, meaning "real as distinguished from apparent, constructive, or imputed." While, as we have already said, in the cases to which we have above referred, in construing what is now section 3860 of the Code, the words 'actual necessity" were not used, the plain meaning of the court in the words used in defining the necessity which must exist to justify the condemnation of unused lands already developed to a public use was that there must be an actual necessity (as the word "necessity" in *that connection* was defined) for the land sought to be condemned.

The word "specific" is defined to mean "tending to specify, or to make particular, definite, limited or precise, as a specific statement.' 7 Words and Phrases, 6509. While, in the above-named decisions, the court did not say, in express terms, that the party seeking to condemn lands devoted to a public use must show an actual necessity for the *precise lands* sought to be condemned, this court did use expressions which convey the same thought and which legally mean the same thing.

In the *Mobile & Girard Case* referred to, this court, commenting upon the identical question now in hand, said: "The real controversy is whether the Alabama Midland Railway Company shall locate its road on the west or east side of the Mobile & Girard Railroad. The controversy arises on the facts that no part of the right of way on the west side is in actual use, while on the east side there is a side track from the main track to the Troy Fertilizer Works situated on the east line of the right of way. The road of the Alabama Midland Company, if located on the east side, would cross diag-

onally this track, which is in daily use. If the cost of construction on the west side, with the attendant circumstances, is so much greater than on the east side as to clearly outweigh and sensibly exceed the injury which would approximately result to the Mobile & Girard Railway Company from crossing the side track alluded to (the question of competition for the business of the Fertilizer Works being eliminated), then it would be proper to condemn the right of way on the east side in the manner sought by the petition as last amended; if otherwise, condemnation should be withheld, unless the route on the west side is shown to be impracticable on account of other considerations."

It seems clear, therefore, that long prior to the passage of the act of 1903, which is now codified, in part, as section 3867 of the Code of 1907, this court had clearly defined the word 'necessity,' when used in connection with the condemnation of a part of the lands of a public service corporation to a *new* use by the public, and that it was the settled law of this state, fixed by a line of well-grounded decisions of this court, that in proceedings for the condemnation of land or of an easement or interest therein, if the property sought to be condemned had already been subjected to a public use, such land or portion thereof or interest therein could not be taken for another and different character of public use unless an actual necessity for the specific land existed in favor of the company seeking its condemnation, and unless the use of the land for the purposes for which it was sought to be condemned would not materially interfere with the use to which the property was already devoted. This conclusion seems to be irresistible, and section 3867 of the Code is but a succinct, definite, and emphatic statement of the law of the state as it existed at the time of the passage of the

act of 1903, to which we have referred, and at the time of the adoption of the present Code. In other words, section 3867 of the Code is but a codification of previous decisions of this court construing what is now section 3860 of the Code of 1907, and its incorporation into our Code has made no material change in our laws on the subject of eminent domain. This construction of the statute places it not only in harmony with the letter but the spirit of the above-quoted section 23 of our Constitution and in full accord with the laws of the state touching the subject now under consideration, as they were declared by this court at the time the statute was adopted. It is to be presumed that the "Legislature does not intend to make any change in the existing law beyond what is expressly declared," and "the presumption is against any radical change of legislative policy."—2 Lewis' Sutherland Stat. Constructions (2d Ed.) 931. "Reviewers of statutes are presumed not to change the law if the language which they use fairly admits of a construction which makes it consistent with the former statutes; and it is a well-settled rule that in the revision of statutes neither an alteration in phraseology nor the addition or omission of words in the latter statute shall be held necessarily to alter the construction of the former act, excepting where the intent of the Legislature to make such change is clear. But where no effect can be given to the new language in any other manner, the law will be construed to be changed." 36 Cyc. 1067, 1068.

In the case of *Mobile & Ohio Ry. Co. v. Postal Tel. Co., supra,* this court said: "Common knowledge teaches that there is ample space on the 100 feet of the railroad's right of way for two or more telegraph lines without obstructing the free and ample use for railroad purposes." We think that this is true whether

upon that right of way there is a single or a double track.

Telegraph companies and railroad companies (quick methods of communication and of transportation) go hand in hand, and the public demands that each shall, when that can reasonably be done, be so constructed and maintained that the one, when it needs the service of the other, shall be so situated as to be able to obtain such service. There are two sides to every railroad right of way, and in the above-mentioned case this court, in perfect harmony with, and in full recognition of, the doctrine of *necessity* which it had announced and enforced in said cases of the *East & West Ry. Company,* the *Anniston & Cin. Co.,* the *Mobile & Girard Company,* and the *South & North Ala. v. Highland Ave. Co.,* declared that condemnation of a part of the unused portion of the right of way of a railroad company could lawfully be had by a telegraph company for the purpose of erecting its poles and maintaining telegraph lines thereon when that could be accomplished "without material interference with the free exercise of the franchise of the railroad company nor extend to that part of its right of way which is in actual use."

The doctrine of "actual necessity for the specific portion of the land sought to be condemned" of a public service corporation announced by this court in the above-named decisions, and which has, as already stated by us, been made a part of our statutory law, was fixed by the law out of *public,* not *private,* considerations. Public interest is the lode star of every statute conferring the right of eminent domain, and this court, in said case of *Mobile & Ohio Ry. Co., supra,* having in mind the *public interest,* in effect declared that whenever a telegraph company, seeking to condemn an unused part of a railroad's right of way for

the purpose of erecting and maintaining a line of telegraph thereon, shows by its petition and its proof that it stands in actual need of a right of way, and that such condemnation can be had "without material interference with the franchise of the railroad company, and that it will not extend to that part of the right of way which is in actual use," then an actual necessity for so much of such unused portion of such right of way as is actually needed for telegraph purposes is shown. "The danger always to be guarded against is the abuse of power in taking more from the citizen than is *reasonably* required for the improvement contemplated." *Bennett v. City of Marion,* 106 Iowa, 632, 76 N. W. 845.

Under the decisions of this court and under the statute now under consideration, when a public service corporation seeks to condemn a part of the lands of another public service corporation, the necessity for *some* of the land being shown, only so much as is *actually* needed can be condemned.

If it is true that the South & North Alabama Railroad Company desires, as has been intimated, to confer upon some other telegraph company the right to construct and maintain a telegraph line upon its right of way, we cannot, as a matter of common knowledge, understand why both telegraph companies, rivals for the public business though they be, cannot maintain their telegraph lines along the margins of the railroad's right of way without materially interfering with the free and ample use by the railroad of its right of way for railroad purposes. The fact that the railroad company may, at some *indefinite* time in the future, *possibly* need the land now sought to be condemned has no effect upon the right of condemnation secured by our Code. It is the present situation and probable

future development with which our statutes of eminent domain have to deal.

5. It is contended by appellee that the act of the Legislature of 1903, which is now codified in part as section 3867 of the Code of 1907, made some radical changes in our laws on the subject of eminent domain, and that the above construction should not be given to said section 3867. This section, says the appellee, is new to the Code of 1907 and was intended, among other things, to relieve the courts of the responsibility of determining the relative advantages to the public between a telegraph company and a railroad company. The appellee also calls attention to the fact that section 1244 of the Code of 1896, which provided that "any telegraph company, incorporated under the laws of this or any other state, shall have the right to construct, maintain, and operate lines of telegraph along any of the railroads or other public highways in this state, but such lines of telegraph shall be so constructed and maintained as not to obstruct or hinder the usual travel on such railroad or other highway," was not brought forward into the Code of 1907, and advances that fact as an additional argument against the construction which we have above given to said section 3867.

Section *2490* of the Code of 1896, which provided that "the right of way is granted to any person or corporation having the right to construct telegraph or telephone lines within this state to construct them along the margin of public highways," was brought forward into the Code of 1907 as section *5817* to which we have above referred, and *that* section, read in connection with section 242 of our Constitution which we have also set out in full, means exactly what was meant by said omitted section 1244 of the Code of 1896.

We repeat that, under the present conditions of business and social development, the constant demand is for increased facilities for freight and passenger transportation and for quick, reliable, and uninterrupted methods of communicating messages from point to point. The traveler demands not only safe, comfortable, and speedy methods of transportation, but he also demands convenient, reliable, and quick methods of communicating with other people while on his journey. As telegraph companies can operate their lines upon limited spaces and thus create but little, if any, inconvenience to a railroad in the operation of its railway system, it is now, and so far as we can discover has ever been, the policy of the state of Alabama, for the benefit of its citizens, and for the benefit of the citizens of the United States of which it forms a part, to permit, through the exercise of the powers of eminent domain, telegraph companies, upon the payment of just compensation therefor, to erect and maintain their lines along the margins of railroads in this state, *provided* the parts of the rights of way so condemned are not in *actual* use by the railroads for railroad purposes, and *provided* no *material* interference is thereby caused to the railroads in operation of their trains. We find, for the reasons already given, no material difference, in so far as the rights of the parties to this litigation are concerned, between the law as it now exists and the law as it existed in this state at the time this court rendered the decision in *Mobile & Ohio Ry. Co. v. Postal Tel. Cable Co., supra.* To hold otherwise would be to hold that the Legislature, for no wise purpose, had in the passage of the statute under consideration disregarded the entire judicial and legislative history of the state and had created in favor of public service corporations immunities not contemplated by the peo-

ple of the state when they adopted the Constitutions of 1876 and 1901.

6.   The argument is advanced by appellee that as Congress has declared railroads to be post roads, and as it has withheld from telegraph companies the right to condemn, under the federal law, any portion of the right of way of a railroad company, the Congress has therefore occupied the field of legislation upon the subject now under consideration to the exclusion of the power of the state, and that therefore the courts of this state are without jurisdiction to grant the relief prayed for in the petition.   We find nothing in any of the cases adjudicated by the federal courts indicating that any federal court has ever assumed so extreme a position.   On December 28, 1912, Judge Walter Evans, for the Western federal district of Kentucky, in an opinion which is before us, in a case which is, in fact, but a branch or part of the present litigation, assumed a position which is entirely inconsistent with the above argument.   *Western Union Tel. Co. v. L. & N. Ry. Co.* (D. C.), 201 Fed. 946.   In the case of *Western Union Tel Co. v. Penn. Ry. Co.,* 195 U. S. 540, 25 Sup. Ct. 133, 49 L. Ed. 312, 1 Ann. Cas. 517, the Supreme Court of the United States not only announced no such views but, as already stated, adverted to the fact that in the state of New Jersey there was no statute authorizing a telegraph company to condemn to its use a part of the right of way of a railroad company.   In the case of *Oregon Short Line Ry. v. Postal Tel. Co.,* 111 Fed. 842, 49 C. C. A. 663, the federal court, acting under the statutes of the state of Idaho, condemned a part of the right of way of a railroad company to the use of a telegraph company. In the case of *Postal Tel. Co. v. South. Ry. Co.* (C. C.) 89 Fed. 190, the federal court condemned, under the statutes of North Carolina, a part

of the right of way of a railroad company as a part of
a post road of the United States; and in the case of
*Postal Tel. Co. of Montana v. Oregon Short Line* (C.
C.) 14 Fed. 787, a federal court condemned, under the
statutes of Montana, a part of a railroad's right of way
to the use of a telegraph company, and in that case the
railroad was recognized and treated as a "post road"
of the United States.

If, as is alleged in the petition, the condemnation of
the property sought to be condemned in this proceed-
ing for the uses set forth in the petition will not mate-
rially interfere with the performance by the railroad
company of its duties as a servant of the public, then
there can be no interference with interstate commerce
and no impairment of the efficiency of a post road of
the United States.

The language of our statute is plain and is in per-
fect harmony with the laws of the United States gov-
erning the subjects of interstate commerce and post
roads.   As was recently said by the Supreme Court of
the United States: "Our dual form of government has
its perplexities, state and nation having different
spheres of jurisdiction;   *   *   *   but it must be kept
in mind that we are one people; and the powers re-
served to the states and those conferred on the nation
are to be adapted to be exercised, whether independ-
ently or concurrently, to promote the general welfare,
material and moral.   This is the effect of the decisions."
*Effie Hoke v. United States,* 227 U. S. 308, 33 Sup. Ct.
281, 57 L. Ed.

The federal Congress has not conferred jurisdiction
upon federal courts to exercise, under a federal statute
of eminent domain, the right of eminent domain in
cases like the present, and there is nothing prohibiting
states from doing so under statutes similar to our own.

Under our statute, there can be no condemnation of any part of a right of way of a railroad company when such condemnation will result in material interference with the proper and orderly conduct by such railroad company of the business which, as a servant of the public, it has the right, under its charter, to perform. As this is true, no condemnation of any part of the right of way of a railroad company which is legally had under our Constitution and statutes can in any way affect interstate commerce or a post road of the United States. *Western Union Tel. Co. v. L. & N. Co.,* (D. C.) 201 Fed. 932. The Western Union Telegraph Company and the Louisville & Nashville Railway Company and its subsidiary lines are useful servants of the people of the state, and neither corporation can, through the courts of this state, be permitted by condemnation proceedings, to materially interfere with the business of the other. Both are equally under the protection of the laws of the state; and, as we have already said, the language and purpose of the statute under which this condemnation proceedings was instituted are in perfect accord with the policy and the laws of the federal government touching the subject of interstate commerce and post roads. In fact, so far as our investigations go, the authorities, both state and federal, uphold the power which, in this case, the courts of Alabama are called upon to exercise.

It appears to us, therefore, that the petition in this cause shows a right in the petitioner, subject to the qualifications set forth in the petition as to the future necessities of the railroad company, to condemn the property described in the petition to the use and for the purposes set forth in the petition. This cause is therefore reversed and remanded, with instructions to the

court below to proceed in said cause in accordance with this opinion.

REVERSED and remanded. All the Justices concur, except DOWDELL, C. J., who is absent, and SAYRE, J., who dissents.

### ON APPLICATION FOR REHEARING.

1. In the case of *People v. Salem*, 20 Mich. 452, 4 Am. Rep. 400, the Supreme Court, speaking through Cooley, J., said: "The right of eminent domain is a vital right in every government and must often be called into exercise when a *special necessity demands that the private right in a particular piece of property shall give way to the public good.*"

The above definition of "eminent domain" by Judge Cooley was written by him over 40 years ago, and in the above case, in which he so defines that subject, reference was made by him to the case of *Sadler v. Langham*, 34 Ala. 311. The opinion in *Sadler v. Langham* was written for our court by the late Chief Justice Stone; and while Chief Justice Stone did not, in referring to the subject of eminent domain, define it in the above language of Judge Cooley, nevertheless the entire argument of Chief Justice Stone in that case shows that he had in his mind, when he wrote that opinion, and intended to declare that no private right could be invaded by the exercise of the power of eminent domain unless a special necessity demanded that the private right in a particular piece of property should give way to the public good, or, as section 3867 of the Code of 1907, quoted in the above opinion, expresses it, "unless an actual necessity for the specific land or portion therof or interest therein shall be alleged and proven." In fact, an actual necessity, for public purposes, of the

specific land or interest therein, which is sought to be condemned, lies at the very root of every proceeding invoking the exercise of the power of eminent domain, for it is only upon the theory of public necessity that any private property, no matter how insignificant it may be, can be taken from its owner and, against his will, devoted to a public use. The laws of Alabama on the subject of eminent domain are now what they were declared by this court to be before the passage of the above-quoted section 3867 of the Code of 1907.

2. Something is said in briefs of counsel on this application for a rehearing on the subject of the amount of damages. This subject is not presented by this record, and we have not only not discussed it, but by nothing that we have said do we intend to intimate any opinion upon that subject. The value of the appellee's land sought to be condemned is a matter resting in evidence and not in the judicial knowledge of this court.

The application for a rehearing is overruled.