197 So.2d 453

G. Clyde BRITTAIN, as Judge of Probate,

v.

SOUTHERN RAILWAY COMPANY.

7 Div. 730.

Supreme Court of Alabama.

March 30, 1967.

Jas. S. Hubbard, Anniston, for appellant.

Knox, Jones, Woolf & Merrill, Anniston, and Cabaniss, Johnston, Gardner & Clark, Birmingham, for appellee.

GOODWYN, Justice.

The question in this case concerns the right of the State to condemn, for use in constructing a non-access highway known as Interstate 20, a right of way at grade level across a spur track belonging to Southern Railway Company. The track is approximately 6300 feet in length. Acquisition of the right of way would render 4670 feet of the track unavailable for use by Southern as a spur track.

Following a hearing on the application for condemnation in the probate court, an order of condemnation was entered. To review this ruling, Southern applied to the circuit court for mandamus. A rule nisi was issued, to which the probate judge made answer. After an oral hearing, there was judgment granting a writ of mandamus directing the probate judge to vacate his order of condemnation and to dismiss the application for condemnation. This appeal is from that judgment. Code 1940, Tit. 7, § 1074.

In the recent case of Southern Railway Company v. Todd, 279 Ala. 260, 262, 184 So. 2d 341, 343, it was held that "mandamus is the proper method to review a ruling of the probate court when it has entered an order of condemnation." There, as in the case before us, the order of condemnation was granted in the probate court and this ruling was reviewed by mandamus filed in the circuit court.

In granting mandamus, the trial court wrote an opinion which we consider entirely adequate for disposition of the questions going to the merits of the case. We, therefore, adopt that opinion as the opinion of this court and affirm the judgment. Under the circumstances, we see no need to consider the procedural questions raised by Southern. The opinion is as follows:

"The State of Alabama, subject only to the limitations imposed by the Constitution of the United States, and the laws and treaties enacted or adopted thereunder, has an unlimited right to condemn private property for public use without the consent of the owner.

"The extent to which the State will go in exercising its rights is determined by the duly adopted and constitutional laws of the State.

"Title 19, Section 9, Code of 1940, which first appeared in the Code of 1907, provides in part that if the property sought to be condemned has already been subjected to or devoted to a public use, such land shall not be taken for another public use unless an actual necessity for the specific land shall be proved, and unless it be proved that such other public use will not materially interfere with the public use to which the land is already subjected or devoted.

"In relation to controlled-access highways by Title 23, Section 145, of the Code of Alabama, Recompiled 1958 (the Michie Co.) [Code 1940, Tit. 23, § 145], the highway authorities were authorized to acquire private or public property for controlled-access facilities.

"In that regard, (Under Section 146) [Tit 23, Code 1940] the state or any of its subdivisions has the right to provide for the elimination of intersections at grade with existing state or county roads and city or town streets by grade separation *or by closing off such roads and streets at the right-of-way boundary*.

"The case made by the pleadings is that the Southern Railway Company in about 1917 became the owner of certain rights in the land of others, to-wit Harbison-Walker Refractories and 'the Clark Estate'. This involved a right-of-way

25 feet wide from the main line of the Selma and Rome division for a distance of about 6300 feet northwesterly to a quarry in the side of a mountain. The right-of-way was acquired for the purpose of relocating an industrial spur track and maintaining the same thereon. Until 1954, at least, the right in land was subject to or devoted to a public use, hauling freight for hire. The original purpose of acquiring the right-of-way was laying down the track and hauling freight for hire. The Judge of Probate [in effect] has ordered condemnation of about 4670 feet of this spur and the use thereof.

"Section 242 of the Constitution of 1901 provides that all railroads not constructed and used exclusively for private purposes shall be public highways.

"As late as 1962 the Southern Railway delivered approximately 600 carloads of pipe to a point between the Meadowbrook and Airport Crossings, drawing as many as 38 cars at a time past a crane up through the Meadowbrook Crossing and backing them southward as they were unloaded.

"In 1954 a carload of machinery was unloaded at the Dr. Pepper plant. This plant and the Meadowbrook Crossing are farther out the spur than the actual land to be condemned.

"On August 3, 1965, the State filed a petition to condemn the part of the 25-foot right-of-way within the proposed right-of-way and any rights in the Southern Railway of access to or through Proposed Highway 20. That is to say the condemnation closed off the spur track at its intersection with the south line of the project.

"The right to maintain the spur track and to go upon it with engines and cars

for the hauling and delivery of freight for hire is private property subjected to or devoted to a public use. It is not public property. Western Union Telegraph Co. vs. S. & N. Ala. R. R. Co., 184 Ala. 66, 62 So. 788.

"Under the rules of statutory construction, Title 23, Section 145, by giving the right to acquire private property without expressing any qualifications or exceptions did not repeal Title 19, Section 9, relating to property that has already been subjected to or devoted to a public use. Title 23, Section 146, does not refer to railroads.

"Unless the railroad right-of-way had in some way, on and before August 3, 1965, ceased to be devoted to or subjected to use for the common carriage of freight for hire, the State Highway Department would have no right materially to interfere with it. Southern Railway, on about September 1, 1965, spotted cars on this spur on each side of Highway 78 farther out the spur than the portion condemned. It was susceptible of use for common carriage of goods. The 25-foot strip was originally devoted or subjected to that use.

"It is therefore considered and adjudged that the property and rights sought to be condemned were on August 3, 1965, and now are devoted or subjected to common carriage of goods; and that the use projected by the State Highway Department would materially interfere with, and in fact terminate, that use; * * *."

Appellant's motion to set aside submission denied.

Affirmed.

LIVINGSTON, C. J., and LAWSON and COLEMAN, JJ., concur.