MADDOX, Justice.
The principal issue in this case is whether a municipality may contractually waive or restrict its power of eminent domain.
*16 The facts of this case are as follows: Plaintiff, Public Relations Counsel, Inc., is the owner of Lot 2, Block 4 of the East Church Urban Renewal Area (the Area) in Mobile. One of the defendants, the Mobile Housing Board, is the owner of Lot 1, Block 4- of the Area. The other defendant, the City of Mobile, is the owner of Lots 3 and 4.
Plaintiff purchased Lot 2 on April 4, 1969, prior to the time the City purchased Lots 3 and 4.
At present, the city museum is located on Lot 3. According to plans on file in the Inspector Services Department of the City, the City proposes to expand the museum from Lot 3 across the existing public walkway and onto Lot 1. The proposed plans for the museum expansion were approved on December 4, 1978, by the Architectural Review Board of the City, and were approved on December 6, 1978, by the defendant Mobile Housing Board. The completion of the proposed expansion will require a deed from the defendant Mobile Housing Board to the defendant City of Mobile conveying Lot 1 of the Area to the City.
The diagram of the area illustrates where the lots are presently located as well as the public walkway which is the subject of the controversy.
The warranty deeds executed by the Mobile Housing Board to the grantees of the lots in the Urban Renewal Area provided that the grantees were subject to certain restrictive covenants, one being that each purchaser would develop the property in conformity with the Urban Renewal Plan on file with the City, which provided, in part:
“The Board of Commissioners of the City of Mobile may modify the Urban Renewal Plan at any time upon recommendation of the Mobile Housing Board; provided, however, that if any land in the Project Area has been leased or sold, the modification must be consented to in writing by the purchaser or lessee of the properties affected by the proposed modification.” (Emphasis added).
The plaintiff objected to the construction of the proposed building over the area designated as “public access” and sought to enjoin the City and the Mobile Housing Board from proceeding with the proposed expansion of the city museum, claiming that the expansion or acts in furtherance of it were illegal, as constituting a vacation of a public way not in conformity with statutory procedure, as constituting a modification of the urban renewal plan without the consent of the plaintiff which consent was specifically provided for in the urban renewal plan, and as constituting violations of restrictive covenants and applicable deeds. In short, the plaintiff took the position that the terms of the urban renewal plan, the plats recorded in connection with it, the restrictive covenants and deeds applicable to property sold under the urban renewal plan, were binding upon the Housing Board and the City, were material considerations in the plaintiff’s purchase of its property, and constituted contractual rights which could not be abrogated by the City. Plaintiff also asserted rights to have parking provided and maintained for its property as provided in the urban renewal plan. Trial on the merits of the permanent injunction was consolidated with the hearing on the application for a preliminary injunction, and on February 8, 1979, the trial judge held that the City could not contractually waive or restrict its power of eminent domain, citing as authority the following:
“The power of eminent domain is inalienable, and no legislature can bind itself or its successors not to exercise this power when public necessity and convenience require it. A statutory provision *17 that the power of eminent domain shall not in whole or in part at any future time be exercised is therefore invalid. The power of eminent domain is so inherently governmental and so essential to the public welfare that it cannot be abridged or restricted by agreement, and a contract executed by the state which barters away this right is not within the protection of the impairment clause. The foregoing principle applies alike to contracts between the state and an individual or corporation. Similarly, agencies to whom the power of eminent domain is delegated cannot by agreement restrict their right to exercise the power.” 16 Am.Jur.2d Eminent Domain § 2.
The trial court also held that if the City chose to vacate the public way that it must comply with the applicable statutory provisions, and damages would be assigned to the plaintiff as provided by law.
Plaintiff appealed to this Court raising the same issues presented to the trial court: (1) Whether by exercise of the power of eminent domain the City may close the existing public walkway for the purpose of expanding the existing museum; (2) Whether the contemplated expansion would be an impairment of the obligations of contract; (3) Whether the action of the City and the Mobile Housing Board was an attempt to vacate a public way not in conformity with statutory procedure; and (4) Whether the Housing Board was required to provide parking.
In considering this case, we accept the fact that it is undisputed that the proposed expansion of the museum would violate the Urban Renewal Plan and the restrictive covenants in the Area. The specific questions here presented have not been previously decided by this Court insofar as we are aware. In deciding these questions, we must attempt to construe legislative intent as that intent is expressed in the statute dealing with urban renewal, powers granted to cities to condemn property, and in statutes which restrict the rights to condemn when property is already devoted to public use. By statute, governmental agencies are granted the power to condemn property and establish urban renewal plans. Municipalities, as is true here, may become grantees of property located in the Urban Renewal Area. Certain areas within the Urban Renewal Plan are designated as “public areas,” as is true here. As public areas already devoted to public use, can the property then be taken for another and different character of public use? Can the City, by exercising its power of eminent domain, modify its Urban Renewal Plan, which, by its terms, required the consent of the purchasers of lots in the Area, and which consent was refused by one of the purchasers? In short, can a city contractually waive or restrict its power of eminent domain?
As a general rule, a city cannot, in perpetuity, by contract, waivé or restrict its power of eminent domain.
In Brock v. City of Anniston, 244 Ala. 544, 14 So.2d 519 (1943), it is succinctly stated:
“As has been often observed, the power of eminent domain is one of the highest powers of government, an attribute of sovereignty, inherent therein as a necessary and inseparable part thereof. It is a right which antedates constitutions, inherent in society and superior to all property rights.”
It should be noted, however, that as stated in Dean v. County Board of Education, 210 Ala. 256, 97 So. 741 (1923):
“Inasmuch as the right lies dormant in the state until legislative action is had pointing out the occasion, mode, conditions, and agencies for its exercise, the right to exercise the power must be conferred by statute, either in express words or by necessary implication, and is not to be gathered from doubtful inferences.”
We hold that property devoted to “public use” in urban renewal plans occupies the same status as other property which has been devoted to a public use, and the procedure which is applicable is set out in Code 1975, § 18-1-6:
“§ 18-1-6. Condemnation of property already devoted to public use.
*18 “If the property sought to be' condemned or any portion thereof or interest therein has already been subjected to or devoted to a public use, such land or portion thereof or interest therein shall not be taken for another and different character of public use unless an actual necessity for the specific land or portion thereof or interest therein shall be alleged and proven, and unless it be alleged and proven that such other and different character of public use will not materially interfere with the public use to which such property is already subjected or devoted; provided, however, that this section shall not apply to any crossing, at grade or otherwise, of the right-of-way of any railway company when such crossing is made by any state highway, county road or city street within counties having populations of not less than 34,875 nor more than 36,000, according to the most recent federal decennial census.”
In the present case, if the City of Mobile decides to condemn the walkway, then it must prove both (1) actual necessity, and (2) that the other use will not materially interfere with the public use to which the property is already devoted.
Whether there is an actual necessity and whether the taking will materially interfere with the public use to which the property is already devoted are mixed questions of law and fact for the judge hearing the case. Each case must be decided on its own facts.
In Southern Railway Co. v. Todd, 279 Ala. 260, 184 So.2d 341 (1966), a case where the City of Huntsville widened a street crossing the tracks of the Southern Railway Company, this Court upheld the trial court’s finding that:
“. . . [T]he additional land was actually necessary, was in the public interest, would substantially contribute to the orderly and safe movement of traffic and would not materially interfere with the public use to which the property was already subjected.”
In a case decided one year later, however, this Court held that where the state sought to condemn a spur track belonging to Southern Railway Company, for the purpose of building Interstate 20, and thereby render 4,670 feet of the 6,300-foot track unavailable for use by Southern, the use by the state would materially interfere with that.use and thus the condemnation was not allowed. Brittain v. Southern Railway Company, 280 Ala. 650, 197 So.2d 453 (1967).
AFFIRMED.
BLOODWORTH, ALMON and SHORES, JJ., concur.
TORBERT, C. J., and BEATTY, J., concur in result.
FAULKNER, JONES and EMBRY, JJ., dissent.