# Mobile & Girard Railroad Co. *v.* Ala. Midland Railway Co.

*Statutory Proceedings by Railroad Company, for Condem-
nation of Right of Way.*

1. *Condemnation of right of way by railroad corporation; interfer-
ence with franchise of older corporation; jurisdiction of Probate Court.*
Under statutory provisions authorizing and regulating proceedings
for the condemnation of a right of way by railroad corporations (Code,
§§ 1580-82, 3207-18), construed in connection with the constitutional
provision pertaining to the exercise of the right of eminent domain
(Art. I, § 24), a railroad corporation organized under the general stat-
utes, without a special legislative charter, may institute such proceed-
ings for the purpose of condemning a part of the right of way of an
older corporation, and the Probate Court has jurisdiction to make an
order of condemnation; but the right of condemnation in such case,
and the jurisdiction of the court, are subject to the limitations herein-
after stated.

2. *Same; limitations on right of condemnation.*—Under such statutory
proceedings, the right of condemnation does not authorize an unnec-
essary interference with the free exercise of the franchise of the older
corporation, nor extend to that part of its right of way which is in
actual use, and the use of which is reasonably necessary to the safe
and proper management of its business—not merely used to prevent
another corporation from condemning it; and a reasonable necessity
must be shown for the condemnation of any other part.

3. *Same; reasonable necessity, as determined by practicability of
another route, cost, etc.*—A necessity, such as authorizes one railroad
corporation to condemn a part of the right of way of another, does not
mean an absolute and unconditional necessity as determined by phys-
ical causes, but a reasonable necessity under the circumstances of the
particular case, dependent upon the practicability of another route,
considered in connection with the relative cost to one and probable in-
jury to the other; and the right of condemnation is not made out, unless
the petitioning company shows that the cost of acquiring and construct-
ing its road on any other route clearly outweighs the consequent dam-
age which may result to the older company, not including the question
of competition for the business of a manufacturing (or other large) es-
tablishment on the line of the proposed route.

[Mobile & Girard R. R. Co. v. Ala. Midland R'y Co.]

APPEAL from the Probate Court of Pike.

Heard before the Hon. W. J. HILLIARD.

In the matter of the petition of the Alabama Midland Railroad Company, a corporation organized under the general statutes of the State, seeking to condemn a right of way for its road along and across the track of the Mobile & Girard Railroad Company, near and through the city of Troy in Pike county. The petition was contested by the Mobile & Girard Railroad Company, which was incorporated under a legislative charter granted on the 21st January, 1846; but it appeared that the road and franchises of said defendant corporation had been leased, for the term of ninety-nine years, to the Central Railroad & Banking Company of Georgia. The defendant corporation demurred to the petition, assigning as grounds of demurrer (with others), that the petitioner did not show any legal right to disturb or interefere with the franchises of the defendant corporation, and did not show that no other route than that proposed was practicable; and a motion was also submitted to dismiss the petition on these grounds. The court overruled the motion and the demurrers, and held that the petitioner was entitled to condemn a right of way as prayed. A jury was then impannelled to assess the defendant's damages, and exceptions were reserved by the defendant to several rulings of the court on questions of evidence; but these rulings require no notice. The appeal is sued out from the judgment of condemnation, and from the rulings of the court on the pleadings and evidence, which are here assigned as error.

NORMAN & SON, ROQUEMORE, WHITE & MCKENZIE, and JOHN PEABODY, for appellants.—(1.) While railroad corporations, like all others, under constitutional provisions, hold their property and franchises subject to the right of eminent domain, that right can only be exercised, to their detriment, by the General Assembly, which is the sole judge of the public interests involved which justify or require its exercise. Railroads incorporated under the general statutes are organized for purposes of private gain, having no element of public interest, except indirectly. They select their own *termini* and route, having knowledge of the routes of other existing corporations; and to allow them to seriously obstruct or interfere with the vested rights of other corporations, as their own private interests may dictate, would lodge a dangerous power in their hands. No such power

[Mobile & Girard R. R. Co. v. Ala. Midland R'y Co.]

has been given to them, and no jurisdiction has been conferred on the Probate Court.—1 Wood's Railway Law, § 229, note; Pierce on Railroads, 152; *A. & C. Railroad Co. v. J., G. & A. Railroad Co.,* 82 Ala. 297, 300; *Pilgreen v. L. & N. Railroad Co.,* 62 Ala. 305; *T. & C. Railroad Co. v. East Ala. Railway Co.,* 75 Ala. 517; 40 Amer. Rep. 743; 118 Mass. 391; 124 Mass. 368; 3 Eng. & Amer. R. R. Cases, 516, 522, and notes. (2.) If such power can be conferred on these corporations, or has been conferred by the general statutes, it can not extend to that part of the right of way of the older corporation which is in actual use, or which is reasonably necessary to the free exercise of its franchises; and a necessity must be clearly shown for the condemnation or invasion of any other part. Here, it is submitted, no necessity whatever was shown, unless a question of costs and expenses involves a legal necessity; and the order of condemnation includes a part of the appellant's right of way which is in actual use, and absolutely necessary for the free and full exercise of the franchises granted by a legislative charter.

A. A. WILEY, *contra.*—Under constitutional provisions, the property and franchises of corporations may be taken for public uses, "the same as individuals." The General Assembly may exercise the reserved right of eminent domain, by acting upon each particular case presented for its consideration, or may, as by general statutes it has done, delegate it to a court and jury, regulating the proceedings by law.—*E. & W. Railway Co. v. E. T., Va. & Ga. Railroad Co.,* 75 Ala. 284; *A. &. F. Railroad Co. v. Kenney,* 39 Ala. 307; *Railroad Co. v. Ker,* 72 N. Y. 330; *R. & P. Railroad Co. v. Louisa Railroad Co.,* 13 How. 71; 24 Amer. Rep. 550; *A. & C. Railroad Co. v. J., G. & A. Railroad Co.,* 82 Ala. 301; *Cooper v. A. & A. Railroad Co.,* 85 Ala. 108. The proceeding in this case followed the statute, and, it is believed, no error intervened.

CLOPTON, J.—This appeal is taken from a decree of the Probate Court of Pike county, condemning a part of the right of way of the Mobile & Girard Railroad Company, on proceedings instituted by appellee. The contest is between corporations, and involves the authority of a railroad company, incorporated under the general laws, to take, by condemnation proceedings, the property, or any part of another

corporation, already devoted, by legislative authority, to a public use. The Mobile & Girard Railroad Company was incorporated in 1846, by an act of the General Assembly, and acquired the right of way condemned under authority conferred by the act of incorporation. The Alabama Midland Railway Company was organized under, and possesses the powers granted by the general laws provided for the incorporation of railroad companies. Importance attaches to the questions presented by the proceedings and order of condemnation brought for review, in view of the advancement of public improvements, and the development of the industrial and mineral resources of the State, so largely dependent on the railroads constructed and projected, which, passing at a period not remote through its entire territory, will, of necessity, intersect, run parallel to a greater or less extent, and concentrate at places, present and prospective railroad centers, where the ways of entrance may be restricted. But, however important in material aspects, their importance should not be permitted to obscure the necessity for the preservation of the rights of private property, of keeping persons or corporations, invested with the extraordinary power of dispossessing others of their property by an enforced sale, within the strict limits of the delegated authority. A relaxation of the rule against corporations would form a basis of subsequent departures in cases of individuals. Public and private interests require, that the line of authority shall be clearly and distinctly marked; and if deemed insufficient to meet the probable exigencies of the future, the remedy rests with the law-making power. What authority, and to what extent, shall be delegated, is a question for the legislature; what has been delegated, a question for the court.

Section 24 of the Declaration of Rights declares: "That the exercise of the right of eminent domain shall never be abridged, nor so construed as to prevent the General Assembly from taking the property and franchises of incorporated companies, and subjecting them to public use, the same as individuals. But private property shall not be taken or applied to public use, unless just compensation be first made therefor; nor shall private property be taken for private use, or for the use of corporations other than municipal, without the consent of the owner; *Provided, however*, that the General Assembly may, by law, secure to persons or corporations the right of way over the lands of other persons or corporations, and by general laws provide for and regulate

the exercise by persons and corporations of the rights herein reserved; but just compensation shall, in all cases, be first made to the owner." The section does not profess to grant, but simply recognizes a right which existed prior to the constitution, as an incident of sovereignty; and is declaratory of the doctrine, that the property and franchises of corporations are held subject to the eminent domain, the same as the property of individuals. Its purpose is to reserve in the General Assembly, as the conservator of the public welfare, unabridged and unimpaired, the exercise of an existing right, and to prevent a construction discriminating in favor of corporations. The office of the proviso is to authorize the legislature, by delegating the power of condemnation or otherwise, to secure to persons or corporations the right of way over the lands of others, and to provide for and regulate, by general laws, the exercise of the right.

The government can not be coerced to grant the privilege of exercising this prerogative power to any citizen, company or corporation. It is only granted when the public welfare will be promoted or conserved by the grant. It can not be exercised or granted in aid of any interest that is not public; and when part of this sovereign power is granted to a railroad corporation, it is not solely, nor chiefly, that the corporation may be aided thereby. It is alone for the actual or supposed benefit to the public, that this grant is, or can be made. True, the railroad corporation may, and probably will be, benefitted by the grant. If it were not for this prospective profit, such stupendous enterprises would not by undertaken. It is on these reciprocal benefits and burdens that the whole theory of the inviolability of corporate franchises rests. The use to the public is increased facility of travel and transportation. This is the public use, which arms the sovereignty with the power to grant. The labor and expense incident to the construction of the railroad, are the consideration on which, independent of constitutional or statutory provisions, the franchise has been adjudged to be irrevocable.

But the power of eminent domain is not exhausted by any grant it may make, though accepted and acted on. Being granted for the public welfare, it may be revoked or modified, whenever the public good requires it. The public good being the pole-star, whenever that object or *desideratum* will be best accomplished by retaking or withdrawing the whole, or a part of the franchise granted, the sovereignty will not stay

its hand, but will again assert itself, if the public welfare demand it. To that grand aim of all good government, all mere private enterprises, or exclusive channels of commerce, must yield.

The power of the General Assembly to take the property and franchises of incorporated companies, and to apply them to another public use deemed more important, upon just compensation being first made, is conceded. Appellant's contention is, that the authority has not been delegated to railroad companies organized under the general laws, and that jurisdiction to condemn such property and franchises has not been conferred upon the Probate Court. The contention brings for construction the general laws, which should be construed in the light of well settled rules. A delegated power to take private property for public use can be exercised only so far as the authority extends, either in express terms, or by clear implication. Statutes delegating the paramount right of eminent domain must be strictly construed, and the authority strictly pursued in the manner prescribed. They are not to be extended by implication further than is necessary to accomplish their general purpose; but not so literally construed as to defeat the manifest objects of the legislature. *Matter of City of Buffalo*, 68 N. Y. 167; Mills' Em. Domain, § 46; 1 Wood's Railway Law, § 224.

The authority of the appellee to take the portions of the right of way of appellants condemned, is claimed under section 1580 of Code 1886, which confers on railroad companies incorporated under the general laws power to acquire and hold, by gift or purchase, or in payment of subscriptions for stock, or by condemnation in the mode prescribed by law, such lands as may be necessary for a way and right of way, not exceeding one hundred feet in width throughout the entire length of the road. Sections 3207 to 3218, inclusive, prescribe the mode of condemnation. The jurisdiction of the Probate Court is claimed under section 3207, which provides: "Any corporation organized under the laws of the State, or any person or association of persons, proposing to take lands, or to acquire an interest or easement therein, for any uses for which private property may be taken, may, if there be no other mode of proceeding prescribed by law, apply to the court of probate of the county in which such lands, or a material portion thereof, may be situate, for an order of condemnation thereof for such uses." By express terms, the statutes give authority to acquire by condemnation pro-

ceedings only those kinds of property, which are included in the comprehensive and generic term, *land*. The term is used in the constitution and the statutes in its broad signification, and comprehends the right of way of a railroad corporation. As a general proposition, it may be said, that railroad companies, organized under the general laws, are authorized by the statutes to acquire by condemnation the right of way of another corporation, when essential to the accomplishment of their principal purposes, or when there is space for the tracks of parallel roads without obstructing the use of the same. The statutes have been so construed, and to that construction we adhere.—*Annis. & Cin. R. R. Co. v, Jacksonville, G. & A. R. R. Co.*, 82 Ala. 297; *East & West R. R. Co. v. E. T., Va. & Ga. R. R. Co.*, 75 Ala. 275.

The general terms, on which the authority is granted, are qualified and limited by the operation and intervention of other controlling principles. There must be no material interference, or obstruction of the free and reasonably necessary use by the company, whose right of way is taken, of the franchise to which it is subject. In *Matter of City of Buffalo, supra,* Folger, J., says: "In determining whether a power generally given is meant to have operation upon lands already devoted by legislative authority to a public purpose, it is proper to consider the nature of the prior public work, the public use to which it is applied, the extent to which that use would be impaired or diminished by the taking of such part of the land as may be demanded for the subsequent public use. If both uses may not stand together, with some tolerable interference, which may be compensated by damages paid; if the latter use, when exercised, must supersede the former, it is not to be implied from a general power given, without having in view a then existing and particular need therefor, that the legislature meant to subject lands devoted to a public use already in exercise, to one which might thereafter arise. A legislative intent, that there should be such an effect, will not be inferred from a gift of power in general terms."

The settled rule is, that the legislative intent to grant authority to one railroad to take and condemn a franchise of another must appear in express terms, or must arise from necessary implication, founded on an existing and particular need. No room for doubt or uncertainty must be left. Should the General Assembly empower a company to construct a railroad between designated and fixed terminal

points, and, to accomplish this object, it becomes necessary to take the franchises, or any part, of another corporation, power to do so arises from necessary implication; the presumption being that the legislature deemed the later use the more important, and of greater public benefit. The implication rests on the general rule, that the grant of power to do a particular thing of a public nature carries with it implied authority to do all that is necessary to accomplish the principal and general purpose. Whether such implication arises in favor of railroad companies incorporated under the general laws, the corporators themselves, and not the legislature, fixing the terminal points, it is unnecessary to decide. If the purposes for which the Alabama Midland Railway Company was incorporated, can be reasonably accomplished, and every power granted in the general terms of the statutes can be exercised, without materially impairing the usefulness of the right of way condemned as a franchise, implication of authority does not necessarily result. The statutes above referred to confer all the authority to take private property, whether of persons or corporations, that exists in railroad companies organized under the general laws. Authority to take the franchise, or any part, of another corporation, is not given in express terms, except so far as necessary to cross or intersect another railroad, and, if not necessarily implied, it does not exist.—*Matter of Bos. & Al. R. R. Co.*, 53 N. Y. 574; *M. & St. P. Railway Co. v. Faribault*, 23 Minn. 167.

A franchise to acquire, hold and use land for a right of way, is in its very nature exclusive, that the privileges and powers granted in respect to its use may be fully exercised. Dispossession of property, subject to the use of a franchise and in actual use, is, to all intents, deprivation of the right to exercise the franchise as to such property—tatamount, in its legal effect, to the taking of the franchise *pro tanto*. We adopt the rule as stated 1 Wood's Railway Law, § 229: "One public corporation can not take the lands or franchises of another public corporation *in actual use by it*, unless expressly authorized to do so by the legislature; but the lands of such a corporation, not in actual use, may be taken by another corporation authorized to take lands for its use *in invitum*, whenever the lands of an individual may be taken, subject to the qualification, that there is a necessity therefor"; with the modification, in order to avoid misunderstanding, that the authority may be implied in a proper case, and the use must be reasonably requisite to the free exercise

of the franchise—not for the mere purpose to prevent the exercise of the right of eminent domain. This rule furnishes the boundary of the delegated authority to take; which is *actual* use of the property by the adversary corporation, and the reasonable necessity of its use to the safe, proper and convenient management of the corporate business, and the accomplishment of the purposes of its creation. Taking the property must not materially diminish or impair the usefulness of a franchise in exercise. As a general rule, a corporation to whom the right of eminent domain is delegated, having the right to locate the line of its road between the terminal points, has also the correlative right, to some extent, to select the lands to be taken. But the discretion must be reasonably exercised, so as to cause as little damage as is practicable; and if abuse in the selection is made apparent, the court, before whom the proceeding is pending, should interfere to control the discretion, and prevent the abuse by refusing an order of condemnation.—*N. Y. Cent. & H. R. R. R. Co. v. M. G. L. Co.*, 63 N. Y. 326; 6 Amer. & Eng. Encyc. Law, 541.

According to the rule stated above, the liability of any portion of the right of way of the Mobile & Girard Railroad Company, though not in actual use, to condemnation for the use of the Alabama Midland Railway Company, is subject to the qualification of a necessity therefor. It would be difficult to lay down any specific rule as to the measure of the necessity, of sufficient scope to include all cases. It may be observed generally, that *necessary*, in this connection, does not mean an absolute or indispensable necessity, but reasonably requisite and proper for the accomplishment of the end in view under the particular circumstances of the case. On the evidence, there is little room for doubt, that the route selected by the Alabama Midland Railway Company to get into the city of Troy, and out to the west, is the most practicable, if not in its proper sense the only practicable route. The contention arises at the point where the line selected enters the right of way of the Mobile & Girard Railroad Company near the corporate limits of the city. To go out of Troy by the proposed route, it is necessary to cross the road-bed of the latter company from the west to the east side, either at the point now proposed, or at a point designated on the map as section 27, or near thereto. The real controversy is, whether the Alabama Midland Railway Company shall locate its road on the west or on the east side of

the Mobile & Girard Railroad. The controversy arises on the facts, that no part of the right of way on the west side is in actual use; while on the east side, there is a side track running from the main track to the Troy Fertilizer Works, situated on the east line of the right of way. The road of the Alabama Midland Railway Company, if located on the east side, would cross this track diagonally, which is in daily use. By an amendment of the petition, and by the order of the court, this side track is excepted from condemnation, but the condemnation extends up to the track on each side. Under these circumstances, it is incumbent on the applicant to show a necessity for the location of its road over the right of way on the east side; that is, that the route on the west side is not practicable under the rules we proceed to state.

When the cost of right of way, the labor and expense of constructing a road-bed so as to be convenient and safe, and the completion of the road on a particular line of survey, are not disproportioned to the benefit likely to accrue; then the route is practicable. In electing between two or more routes, regarded practicable, expensiveness of acquisition and construction, and interference with, or obstruction to other rights of property or franchises, must be taken into consideration. If the advantages to the petitioner for the condemnation of one route over another practicable route (the public welfare being in equipoise), do not clearly outweigh the antagonistic rights and interests it proposes to invade; then the right of condemnation is not made out, and condemnation should be withheld. So far as the element of expensiveness may enter into the consideration as to the practicability of the route on the west side of the Mobile & Girard Railroad, the rule for this case may be stated as follows: If the cost of construction on the west side, with the attendant circumstances, is so much greater than on the east side as to clearly outweigh and sensibly exceed the injury, which would proximately result to the Mobile & Girard Railroad Company from crossing the side track alluded to (the question of competition for the business of the Fertilizer Works being eliminated from the consideration), then it would be proper to condemn the right of way on the east side, in the manner sought by the petition as last amended; if otherwise, condemnation should be withheld, unless the route on the west side is shown to be impracticable on account of other considerations. This rule of election applies specially to cases in which one corporation seeks to acquire and occupy a part of

[Knox v. Armistead.]

the right of way, or other franchise, of another corporation of older organization.

The evidence set forth in the record does not show the impracticability of the route on the west side, under the rules we have stated. Under the circumstances of this case, the inquiry should be specially directed to the question of expensiveness, and the safety and practicability of the necessary crossings to pass from the west to the east side. Under these rules, the order of condemnation is reversed, and case remanded, that the controverted question may be retried on the petition as it now stands, and further proof adduced as to the impracticability of the route on the west side, in respect to the elements of consideration herein suggested; or the applicant may amend the petition, if deemed advisable.

Reversed and remanded.