# Louisville & Nashville R. R. Co. v. Western Union Telegraph Co.

### Condemnation Proceedings.

(Decided December 16, 1915. Rehearing denied February 15, 1916.
71 South. 118.)

1. **Appeal and Error; Former Appeal; Law of Case.**—Under § 5965, Code 1907, it is the duty of the court, where its former ruling is attacked on appeal, to reconsider the former opinion, and if convinced that it is erroneous to disregard and overrule it.

2. **Eminent Domain; Public Use; Railroad Right of Way.**—The sections of the Code of 1896, (§§ 1244-46) having been omitted from the Code of 1907, and being thereby repealed, the law of condemnation by a telegraph company of an easement in a railroad right of way, is governed by § 3867, Code 1907, and it is held that these changes in the statute idicated an intention in the legislative mind to limit the right of a telegraph company to condemn an easement along a railroad right of way to the cases provided for by said § 3867.

3. **Telegraphs and Telephones; Use of Railroad Right of Way.**—Construing the provisions of § 5817, Code 1907, in connection with § 242, Constitution 1901, it is held that said section does not give a telegraph company an easement along a railroad right of way, as the constitutional section was only intended to make railroads highways in a limited sense, and to subject them to state and Federal control, but not to deprive them of their private ownership of their right of way.

4. **Eminent Domain; Regulation; Legislative Authority.**—Section 23, Constitution 1901, does not prevent the legislature from exempting property already devoted to public use from condemnation except in cases of actual necessity as it did by § 3867, Code 1907.

5. **Same; Public Use; Actual; Specific.**—Section 3867, Code 1907, does not authorize a telegraph company to condemn an easement for its lines along the unused portion of a railroad right of way, merely because it is more convenient to do so, or because the easement can be acquired at less cost; the word "actual" as used in the statute meaning real, as distinguished from apparent, constructive or imputed, and the word "specific" meaning tending to specify, or to make particular, definite, limited or precise.

6. **Statute; Construction.**—Where a statute is plain and unambiguous, there is no room for construction to determine its meaning, whether it is expressed in general or limited terms.

7. **Constitutional Law; Judicial Authority; Public Interest.**—The legislature having declared the public policy of the state regarding the condemnation of land already devoted to a public use (§ 3867, Code 1907), the courts cannot be influenced by consideration of public interest in determining the rights of a telegraph company to condemn an easement along a railroad right of way.

[Louisville & Nashville R. R. Co. v. Western Union Telegraph Co.]

**8. Eminent Domain; Questions for Review.**—The Supreme Court is a court of review only and cannot be expected to pass on any question not raised in the court below, on condemnation proceedings.

**9. Telegraphs and Telephones; Easement; Contract; Railroad Right of Way.**—A contract giving a telegraph company the right to maintain its line along a railroad right of way for a period of twenty-five years, and providing at the expiration of that period either party might terminate the contract by giving one year's notice, does not give the telegraph company a permanent easement.

(Anderson, C. J., McClellan and Somerville, JJ., dissent.)

APPEAL from Dallas Circuit Court.

Heard before Hon. B. M. MILLER.

Condemnation proceedings by the Western Union Telegraph Company to condemn an easement for its line along the right of way of the Louisville & Nashville Railroad Company. From a judgment condemning the property and assessing the damages at one dollar, respondent appeals. Reversed and remanded.

H. L. STONE, MALLORY & MALLORY, GEO. W. JONES, J. MANLY FOSTER, and S. L. FIELDS, for appellant. ALBERT T. BENEDICT, FORNEY JOHNSTON, and RUSHTON, WILLIAMS & CRENSHAW, for appellee.

GARDNER, J.—By this proceeding the appellee seeks the condemnation of that portion of the right of way of appellant on its South Alabama Division from Selma to Flomaton; on its Myrtlewood branch from Selma to Myrtlewood, and on its Camden branch from Nadawah to Camden, which is already occupied by petitioner's poles and wires for use as a telegraph line. Upon the first hearing the probate court of Dallas county denied the application, and appeal was taken to the circuit court in that county, where the petition was likewise denied, and on appeal to this court the cause was reversed.—*W. U. Tel. Co. v. L. & N. Co.*, 184 Ala 673, 674, 62 South. 797. The second trial resulted in a judgment of condemnation and an assessment of damages of $1 by the jury. From this judgment this appeal is prosecuted.

Upon the former appeal in this case no opinion was written, but the cause was determined upon the opinion of this court, rendered at the same term, in the case of *W. U. Tel. Co. v. S. & N. Ala. R. R. Co.*, 184 Ala. 66, 62 South. 788, as the result

of that case was conclusive as to this, the question presented being identical; and, for the purpose of the present appeal the opinion above referred to may be taken and considered as the opinion of this court on the former appeal in this case, and for convenience it will be referred to as the "former opinion in this case." Counsel for appellant earnestly urge a reconsideration by this court of said former opinion, and much of their argument is devoted to an attack upon said holding.

(1) Out of a desire that exact justice might be done as nearly as possible in the administration of the law by the courts of last resort, where the rights of parties are to be finally adjudicated, the Legislature many years ago enacted the following, which is now section 5965 of the Code of 1907: "The Supreme Court, in deciding each case, when there is a conflict between its existing opinion and any former ruling in the case, must be governed by what, in its opinion at that time, is law, without any regard to such former ruling on the law by it; but the right of third persons, acquired on the faith of the former ruling, shall not be defeated or interfered with by or on account of any subsequent ruling."

However great, therefore, may be the desire of the courts for stability of decisions, it yet becomes the duty of this court, in cases of this character, in conformity with the above-quoted statute, to review and reconsider its former decision, and, if convinced that the ruling was erroneous, to disregard and overrule the same and be governed by what, in the opinion of the court, at this time, is the law.

(2) It was held on the former appeal that the amendatory act of 1903 (Laws 1903, p. 374), which is codified in part as section 3867 of the Code of 1907, worked no material change in the law as respects the question here under consideration, and that the same was but a succinct statement of the law as it existed at the time of the passage of the act. To use the language of the opinion: "In other words, section 3867 of the Code is but a codification of previous decisions of this court, construing what is now section 3860 of the Code of 1907, and its incorporation into our Code has made no material change in our laws on the subject of Eminent Domain."

After mature consideration this court, as presently constituted, has reached the conclusion that it was in error on the

former appeal of this case, and that, in fact, the above-cited section of the Code has worked a material change in our law so far as respects the rights of this appellee.

It may be said in the outset that the decisions of other courts can be of little service to us in the consideration of this case, for the reason that the determination of this cause rests upon a construction of our own statutes, and there is a lack of similarity as to verbiage and history with those of other states. Nor do we deem an elaborate discussion necessary on this appeal, but will attempt, in a brief way, to state the reasons which impel us to the conclusions we have here reached.

Section 3867 of the Code of 1907 reads as follows: "If the property sought to be condemned, or any portion thereof, or interest therein, has already been subjected or devoted to a public use, such land or portion thereof, or interest therein, shall not be taken for another and different character of public use unless an actual necessitty for the specific land or portion thereof or interest therein shall be alleged and proven, and unless it be alleged and proven that such other and different character of public use will not materially interfere with the public use to which such property is already subjected or devoted."

This section represents the codification of the last sentence in section 3 of the act approved October 1, 1903, amending several sections of the Code of 1896, concerning the right of eminent domain. At the time of the passage of said amendatory act there were in the Code of 1896 sections 1244 and 1246, which read, respectively, as follows: "Any telegraph company, incorporated under the laws of this or any other state, shall have the right to construct, maintain and operate lines of telegraph along any of the railroads or other public highways in this state; but such lines of telegraph shall be so constructed and maintained as not to obstruct or hinder the usual travel on such railroad or other highway.   *   *   *

"Such telegraph company shall be entitled to the right of way over the lands, franchises and easements of other persons and corporations, and the right to erect poles, and to establish offices, upon making just compensation as now provided by law."

These sections were, respectively, section 1652 and 1654 of the Code of 1886.

Much stress is laid in the former opinion in this case upon the decision in *M. & O. R. R. Co. v. Postal Tel. Co.*, 120 Ala. 21,

[Louisville & Nashville R. R. Co. v. Western Union Telegraph Co.]

24 South. 408. The opinion in that case cites the statutes, the above-mentioned sections of the Code of 1886, and states that: "The petition makes a very clear case for the application of the rights conferred by statute for the condemnation of this right of way."

The rights conferred by the statute were, of course, expressly defined in said sections 1652 and 1654 of the Code of 1886, which, as previously stated, were made sections 1244 and 1246 of the Code of 1886.

It is to be noted that counsel for appellant in *The Postal Telegraph Case* contended that no reason or necessity was shown for taking the right of way, and cited the cases of *M. & O. R. R. Co. v. A. M. R. R. Co.*, 87 Ala. 501, 6 South. 404, and *A. & C. R. R. Co. v. Jacksonville, etc., Ry. Co.*, 82 Ala. 297, 2 South. 710. In answer to this insistence and argument of counsel the court, after stating that the petitioner had made out a case for the application of the rights conferred by statute, laid the above-cited cases out of view by merely stating that "these authorities are not in point." The court so stated, in that case, for the simple reason that the right rested upon a clear declaration of the statute, and the decisions of the court involving the condemnation of the right of way of one railroad by another were therefore without application. Sections 1244 and 1246 of the Code of 1886 were not brought forward into the Code of 1907, and they were therefore repealed. The statutes giving to telegraph companies authority to condemn the right of way of a railroad, while in full force and effect and relied upon by the court at the time of the decision of the *Postal Telegraph Case, supra,* were not in existence at the time of the trial of this cause. It therefore appears that the decision of that case can have no material bearing upon the question now under consideration, and we think it was accorded too much weight on the former appeal.

(3) In the former opinion, it was said: "Section 2490 of the Code of 1896, which provided that 'the right of way is granted to any person or corporation having the right to construct telegraph or telephone lines within this state to construct them along the margin of public highways,' was brought forward into the Code of 1907 as section 5817, to which we have above referred, and that section, read in connection with section 242 of our Constitution, which we have also set out in full, means ex-

[Louisville & Nashville R. R. Co. v. Western Union Telegraph Co.]

actly what was meant by said omitted section 1244 of the Code of 1896."

Section 242 of the present Constitution provides that all railroads and canals not constructed and used exclusively for private purposes shall be public highways; and section 5817 of the present Code provides that: "The right of way is granted to any person or corporation having the right to construct telegraph or telephone lines within this state to construct them along the margin of public highways."

This section is found in the chapter of the Code devoted to public roads, and was, as previously shown, section 2490 of the Code of 1896, having appeared (same chapter) in the Code of 1886 as section 1434, in the Code of 1876 as section 1670, and in the Code of 1867 as section 1364. That the right of way of a railroad is private property is well settled, and was fully recognized in the former decision of this case. Section 5817 expressly grants the right for the construction of telegraph lines along the margin of public highways. As the ultimate owner of the beneficiary interest in the public roads of the state, the Legislature doubtless had the power to make such a grant as to the margin of public roads; but, as the right of way of a railway is private property, no such power would seem to exist, for it would infringe upon constitutional provisions. The location of said section 5817 in the Code, and its terms granting an unconditional and free right to use the margins of public highways, tend clearly to show that by "public highways" is meant public roads. We are of the opinion that the language of that statute has no application to the right of way of a railroad. While railroads are denominated public highways, yet they are such in a more or less limited sense, such as to be within state and federal control; but are not public highways in the general sense, such as would permit their use by the public, as in the case of public roads. The language of the Supreme Court of the United States in the case of *W. U. Tel. Co. v. Pa. R. R. Co.*, 195 U. S. 573, 25 Sup. Ct. 142, 49 L. Ed. 312, 1 Ann. Cas. 517, is of interest in this connection, and we quote the following: "It is contended by the telegraph company that the charters under which the several railway companies constituting the system of the railroad company were organized expressly created them 'public highways,' and that in the acquisition of land for

their purposes they were public agents, 'and the land was taken by the government, and in the eye of the law as completely subject to public uses as though it had been taken by the state itself;' that is to say, if we understand the argument, have become 'highways' in the full sense of that word. And counsel further say the difference between them and ordinary highways 'is not a legal difference, but is the difference of the kind of use to which the highway is subject—in the one case, wheel vehicles drawn by horses; in the other, to steam vehicles drawn by locomotives along and upon iron rails.' They are subject, therefore, it is urged, as ordinary highways, and streets of a city are subject, to the control of Congress by virtue of its power over interstate commerce. Counsel in advancing the argument exhibit a consciousness of taking an extreme position. It would seem, certainly if considered with other parts of their argument, to make a railroad right of way public property. To that extreme we cannot go, for the reasons which we have already indicated. The right of way of a railroad is property devoted to a public use, and has often been called a 'highway,' and as such is subject, to a certain extent, to state and federal control; and for this many cases may be cited. But it has always been recognized, as we have pointed out, that a railroad right of way is so far private property as to be entitled to that provision of the Constitution which forbids its taking, except under the power of eminent domain and upon payment of compensation."

We therefore conclude that the repeal of sections 1244 and 1246 of the Code of 1896 cannot be declared to be of no significance because of the presence of section 5817 of the Code of 1907, as we are persuaded that this section is without application to the present case.

(4) There is nothing in section 23 of our present Constitution which, in our opinion, militates against the conclusion we have here reached. This section, with a few slight differences, is the same as section 24, art. 1, of the Constitution of 1875. In construing section 24, this court in *M. & G. R. R. Co. v. Ala. Mid. Ry.*, 87 Ala. 501, 6 South. 404, said: "The section does not profess to grant, but simply recognizes, a right which existed prior to the Constitution, as an incident of sovereignty, and is declaratory of the doctrine that the property and franchises of corporations are held subject to the eminent domain, the same

as the property of individuals. Its purpose is to reserve in the General Assembly, as the conservator of the public welfare, unabridged and unimpaired, the exercise of an existing right, and to prevent a construction discriminating in favor of corporations. The office of the proviso is to authorize the Legislature, by delegating the power of condemnation, or otherwise, to secure to persons or corporations the right of way over the land of others, and to provide for and regulate, by general laws, the exercise of the right. The government cannot be coerced to grant the privilege of exercising this prerogative power to any citizen, company, or corporation. It is only granted when the public welfare will be promoted or conserved by the grant. It cannot be exercised or granted in aid of any interest that is not public; and when part of this sovereign power is granted to a railroad corporation, it is not solely, nor chiefly, that the corporation may be aided thereby."

It is therefore clear that this section is not a restriction upon legislative power and discretion, but that it in fact reserves in the Legislature full power and authority over the subject, as well as plenary discretion in regard to the granting and regulating of the rights of eminent domain.

By the provisions of section 3867 the Legislature, in the exercise of this power and discretion, has merely seen fit to exempt to a modified degree, certain kinds of property; that is, property belonging to a certain class, such as that impressed with a public use, with in the judgment of the lawmaking body, for reasons of policy should not be interfered with except upon certain conditions. We are clear to the opinion that the Legislature was acting within its rightful discretion in making such exceptions.—10 A. & E. Enc. L. (2d Ed.) 1099.

The cases of *M. & G. R. R. Co. v. Ala. Mid. Ry. Co.*, 87 Ala. 501, 6 South. 404, and *Anniston, etc., Ry. Co. v. Jacksonville, etc., Ry. Co.*, 82 Ala. 297, 2 South. 210, which find frequent citation and reference in our former decision in this case, involved the condemnation by one railway of the right of way of another. In neither of these decisions, however, was there used language so definite and emphatic as that now found in section 3867 of our present Code. The strongest expression there used, in this connection, was that there should be a reasonable necessity for the taking of such right of way. The decisions recog-

nize the difficulty of laying down any specific rule, as to the measure of necessity of sufficient scope to include all cases.

In the case of *M. & G. R. R. Co. v. Ala. Mid. Ry. Co.*, *supra*, the rule of strict construction of statutes granting the right of eminent domain is fully recognized, as shown by the following quotation: "Statutes delegating the paramount right of eminent domain must be strictly construed, and the authority strictly pursued in the manner prescribed. They are not to be extended by implication further than is necessary to accomplish their general purpose; but not so literally construed as to defeat the manifest objects of the Legislature."

In the opinion in that case it is further said: "The settled rule is that the legislative intent to grant authority to one railroad to take and condemn a franchise of another must appear in express terms, or must arise from necessary implication, founded on an existing and particular need. No room for doubt or uncertainty must be left. Should the General Assembly empower a company to construct a railroad between designated and fixed terminal points, and, to accomplish this object, it becomes necessary to take the franchises, or any part, of another corporation, power to do so arises from necessary implication; the presumption being that the Legislature deemed the later use the more important, and of greater public benefit. The implication rests on the general rule that the grant of power to do a particular thing of a public nature carries with it implied authority to do all that is necessary to accomplish the principal and general purpose."

It is seen, from a reading of the cases, that much stress is laid upon the rule that where the Legislature has granted power to a railroad company to build a railway between two terminal points, and to accomplish this object it becomes necessary to condemn a portion of the right of way of another road, the power to so condemn is necessarily implied from the corporate authority originally given, and that the question of practicability is considered of great importance, as well as that of avoiding interference with the operation of the road, the right of way of which is sought to be condemned. Reasoning along these lines, the rule as to reasonable necessity was stated, in the former opinion in this case, as follows: "When a right of way is essential to a public service corporation, and there are two

[Louisville & Nashville R. R. Co. v. Western Union Telegraph Co.]

possible routes, one upon unused lands previously acquired by some other public service corporation for a public use, and the other upon private lands, then (the rights of the public being in equipoise) when the cost of the right of way over such private lands and the labor and expense of putting such right of way in proper shape to be used by such second public service corporation are not disproportionate to the benefit likely to accrue therefrom, then the right of way over the private lands is practicable, and a right of way over the unused portion of the lands previously set apart to the first public use should be denied. When, however, the cost of acquiring and constructing the right of way, with its attendant circumstances, over the private lands is so much greater than would be the cost of constructing such right of way over the unused portion of lands previously acquired by the first public service corporation for public use as to clearly outweigh and sensibly exceed the injury which would proximately result to such first public service corporation, then, under such circumstances, so much of the unused portion of the lands belonging to such first public service corporation as is necessary to the actual occupancy and use of the second public service corporation may be condemned for its purposes, but not more."

Upon the former hearing this court held that it was largely a question of practicability, as measured by the further questions of convenience and expense, of comparative advantage and injury "having regard always to the interests of the public, for whose benefit the general authority is given and the particular taking proposed."

In the case of *S. & N. R. R. Co. v. Highland Ave., etc., Ry.,* 119 Ala. 105, 24 South. 114, this court called attention to the rule which required only a reasonable necessity for such condemnation in the following language: "It also had a right to take a portion of the right of way of the defendant, upon showing a reasonable necessity therefor, and that such taking would not destroy the usefulness of the right of way as a franchise, or so impair the capacity of the easement as to render it unsafe; and both of these rights could have been enforced by statutory proceedings provided for this purpose." (citing *M. & G. R. Co. v. Ala. Mid. Ry.,* 87 Ala. 501, 6 South. 404, and *Anniston & Cin. R. Co. v. Jacksonville, etc., R. Co.,* 82 Ala. 297, 2 South. 210).

[Louisville & Nashville R. R. Co. v. Western Union Telegraph Co.]

Whether in the two cases cited in the *S. & N. v. Highland Ave. Case,* there existed in fact an actual necessity for the specific land, or portion thereof, sought to be condemned, within the meaning of section 3867 of our present Code, we need not stop to inquire. Both dealt with the right of condemnation granted to a railroad empowered by law to construct a road between two terminal points. The *Anniston, etc., Case,* had to deal with the condemnation of a right of way through a narrow gap in the mountains. In the building of railroads, as is a matter of common knowledge, the question of grades is an essential factor. In their construction the general topography of the country may, under certain circumstances, render absolutely necessary the use by a second road of a portion of the right of way of another. But such factors would not ordinarily create such imperative necessity in the erection of telegraph lines, and therefore what might be considered an indispensable necessity as a right of way for one would not be so considered for the other. The idea was expressed in *W. U. T. Co. v. Penn. R. R. Co.,* (C. C.) 120 Fed. 362, in the following language: "In railroad location, as we have noted above, grade is an essential factor; in telegraph construction it is, at most, a mere convenience. In railroad construction, the narrowness of defiles, the opening of gorges, the location of streams, the general topography of the country, or the lack of curve space may, under certain circumstances, render it imperatively necessary that the second road should intrench upon a primary location. None of these factors ordinarily create imperative necessity in the case of telegraph lines. With them grades may be ignored, gorges avoided, hills or mountains crossed. In other words, there is no necessity, in the nature of things, that ordinarily requires a telegraph line to be placed on a railroad right of way. Its location there is obviously a matter of convenience and economy."

No language so emphatic as that employed in the last sentence of section 3 of the act of October 1, 1903, which is now codified as section 3867 of the Code of 1907, is found in any of our decisions, and it was new to our statutory system at that time. The act of which this provision was a part purported to amend many of the sections of our Code relating to the power of eminent domain. The language of the statute now under review is therefore radically different from that of the statutes at that

time. Research fails to disclose more than one case where there has been longitudinal condemnation of the right of way of a railroad for telegraph purposes for any great length (*M. & O. R. R. Co. v. Postal Tel. Co., supra*) ; and, as we have heretofore stated, this decision was rested upon the express terms of the statute then in existence. The Legislature, in revising the various sections of the Code relating to the power of eminent domain, and making material changes therein, will therefore be presumed to have intended some change in the law with respect thereto.

"It will be presumed that the Legislature, in adopting the amendment, intended to make some change in the existing law; and therefore the courts will endeavor to give some effect to the amendment."—36 Cyc. 1165.

"When the Legislature employs different language in a subsequent statute in the same connection, the courts will presume a change of the law is intended. The Legislature must be presumed to know both the language employed in the former acts and the judicial construction placed upon them; and, if in a subsequent statute on the same subject it uses different language in the same connection, the courts must presume that a change of the law was intended, and after a consideration of the spirit and letter of the statute, will give effect to its terms according to their proper signification."—*Lehman Durr Co. v. Robinson,* 59 Ala. 219.

That some material change was intended by the Legislature in the enactment of what is now section 3867 of the Code is strengthened by the fact that they declined to repeal this section when the effort to that end was made. Referring to the Senate Journal of the Legislature of 1907 (*Henderson v. State,* 94 Ala. 95, 10 South. 332), it is noted that Senate bill No. 81 was introduced, seeking to amend section 3. of an act, entitled "An act to amend sections 1713, 1714, 1717, 1718, 1719, and 1720 of the Code, approved October 1, 1903," and was referred to the committee on revision of laws.—See Senate Journal 1907, p. 143. On page 744 of the said journal it appears that motion was made to take said bill No. 81 from the adverse calendar, which motion was continued until Wednesday, November 14, 1907; and on page 849 it appears that on the latter date, upon a consideration of the same by the Senate, the motion was laid on

the table by a vote of 25 to 5; the Senate thus refusing to take said bill from the adverse calendar and place it on a second reading. Bills of this character—such as are referred to, and adversely reported by, a standing committee—are required, under the provisions of section 911, Code of 1907, to be preserved, and said Senate bill 81 is therefore before us, and properly so, for consideration. It reads as follows: " *   *   *   That section 3 of an act entitled 'An act to amend sections 1713, 1714, 1717, 1718, 1719, and 1720 of the Code, approved October 1, 1903,' be and the same is hereby amended so as to read as follows:

"Section 3. Be it further enacted, that section 1717 of the Code be amended so as to read as follows:

"1717 (3211) *Allegations, Objections and Proof to be Heard.* —On the day appointed or any other day to which the hearing may be continued, the court must hear the allegations of the application and any objections which may be filed to the granting thereof, and any legal evidence touching the same, and shall make an order granting or refusing the application.

"Provided: that if there are several distinct tracts of lands owned by different persons embraced in the application, the owners of each tract may have a separate hearing as to the right to condemn their lands, and the court may, if it finds the application should be granted as to some and not as to other of the owners, make and enter its decree accordingly.

"The hearing herein provided must in all respects be conducted and evidence taken as in civil cases at law."

On the back of the bill is the following indorsement: "This bill was considered by the committee on revision of laws in session and received adverse report. Oscar O. Bayles, Chairman, January 31, 1907."

A reading of the bill readily discloses that its sole purpose was to repeal the last sentence of section 3 of the act of 1903, above referred to, which is now section 3867 of the Code of 1907, and place the law back as it was before the passage of said act in so far as it concerns the matter here under consideration. The bill, as is noted, is but a copy of said section 3 of the above-mentioned act, with the exception that the last sentence thereof is omitted, and which sentence now constitutes section 3867 of our Code. It was therefore a direct effort to repeal this section. The refusal of the Legislature, or at least, of an im-

portant branch of that body, to repeal said section is not without significance, and lends color to the theory that the lawmaking body considered the change proposed thereby as material and important and not to be disregarded.

The introduction of the bill, with its history, was not called to the attention of this court, on former appeal, and therefore did not enter into the consideration of the cause at that time. That it is a matter to be considered by this court would seem quite clear.

To summarize the situation, we find that sections 1244 and 1246 of the Code of 1896, which expressly authorized such condemnation of the right of way of a railroad, were repealed by the adoption of the Code of 1907, with these sections omitted. In addition to this, the Legislature of 1903 amended the statutory provision in reference to condemnation proceedings and, in section 3 of the act of October 1, 1903, incorporated the language now found in the Code as section 3867, requiring the existence of an "actual necessity for the land or specific portion thereof" before that which has already been devoted to a public use may be subjected to condemnation. In the Legislature of 1907, effort was made to repeal that portion of section 3 of the act above referred to, and which is now section 3867 of the Code, but the bill for this purpose was defeated.

(5) We are persuaded that the Legislature intended a material change of the law in the use of the language, "actual necessity for the specific land, or portion thereof, or interest therein," and that such could not be rested upon the mere questions of economy or convenience to the telegraph company. What would be such actual necessity is difficult of definition so as to lay down a specific rule which would embrace all cases, and would best be left for determination according to the circumstances of the particular case. The cause proceeded to final judgment upon the theory of petitioner that it had the right to condemn the railroad right of way because it needed a right of way and this was to it the most convenient and economical, and such additional use would work no material interference with respondent railway. A necessity that springs merely from the choice or desire of the petitioner is insufficient. As stated in the former opinion, the word "actual" is used here as a word of emphasis, meaning "real as distinguished from apparent, constructive or

imputed." Under the language of the statute, therefore, there must be first a real necessity for the specific land or portion thereof sought to be condemned. The word "specific" finds definition in the former opinion as "tending to specify, or to make particular, definite, limited or precise, as a specific statement." The language there used is strong, emphatic, and definite and without ambiguity or uncertainty.

(6) Speaking to the question of the construction of legislative or constitutional provisions, this court, in *State ex rel. Robertson v. McGough*, 118 Ala. 166, 24 South. 397, said: "There are other rules of interpretation that may override all others, as: 'Where a law is plain and unambiguous, whether it be expressed in general or limited terms, the Legislature (or framers of a Constitution) should be intended to mean what they have plainly expressed, and consequently no room is left for construction. Possible or even probable meanings, when one is plainly declared in the instrument itself, the courts are not at liberty to search for elsewhere.'—Cooley on Const. Lim. 69, 70. The framers of the Constitution 'must be understood to have employed words in their natural sense, and to have intended what they said.'—Id. 73; *Gibbons v. Ogden*, 9 Wheat. 188 [6 L. Ed. 23] ; *Ex parte Mayor*, 78 Ala. 423. 'We can only learn what they intended from what they have said. It is theirs to command, ours to obey. When their language is plain, no discretion is left to us. We have no right to stray into the mazes of conjecture, or to search for an imaginary purpose.'—*Lehman v. Robinson*, 59 Ala. 241."

This statute cannot be so construed as to mean merely such necessity as springs from economical reasons or matters of convenience for this would be but substituting the word "reasonable" for the word "actual." The necessity is defined by the act as "actual," meaning "real," and we are of the opinion that by such language is meant such actual necessity as arises from either physical or overpowering economical conditions, the question of practicability to be, of course, kept constantly in view. No effort was made by the petitioner to prove such actual necessity within the meaning of the language of our statute as now construed by us. For aught that appears, no difficulty exists as an obstacle to the condemnation and use of a right of way. The testimony of the witness for petitioner shows, of course, additional cost for the erection of the telegraph line outside of the

railroad right of way, but this is purely an economical consideration, and one which appears to be by no means overpowering. As before noted, the erecting of telegraph line and the laying of a railroad are entirely different propositions, and what would constitute actual necessity for the one, within the meaning of our statute, might not be at all such to the other. Indeed, from the very nature of things, it is difficult to conceive of an actual necessity, as here construed, for the condemnation by a telegraph company of the longitudinal right of way of a railroad for any considerable distance. It may, of course, exist for short distances on account of peculiar conditions; but these are matters to be determined when the particular case arises.

. (7) Much was said in the former opinion in reference to the public good; it using the language "public interest is the lodestar of every statute conferring the right of eminent domain." The question here under consideration was one resting within the discretion of the Legislature. The right of way of a railroad, acquired by condemnation proceedings, is permitted by law to extend far beyond the actual roadbed, the usual width being 100 feet. Obviously the authority to condemn a way of that width is given the railroad to be exercised, and upon the assumption, at least, that such width is reasonably needful for its purposes. If one telegraph line is permitted to use a part of this right of way, then, under the language of the former decision in this case, other such lines, such as telephone and power transmission lines, would be entitled to use it, and so, by gradual encroachment, ultimately deprive the railroad of its entire right of way, except that portion actually occupied by the railroad. The mere fact that this petitioner agrees to remove its poles, from time to time, from the margin of the right of way, as occasion may require the use of the space by the railroad (conceding that such averments in the petition are binding and effective), would not alter the situation; for it clearly appears that the telegraph company is seeking a permanent location on the right of way, although agreeing to shift the line from place to place. At the time of the passage of the act of 1903, previously referred to, there had been a longitudinal condemnation of a railroad right of way for telegraph purposes, rested upon sections 1244-1246 of the Code of 1896, and a decision by this court (*M. & O. R. R. Co. v. Postal Tel. Co., supra*), in which it was held that in such proceedings a railroad company is enti-

tled to only nominal damages. It was therefore the law of this state at that time that a telegraph company could, through condemnation proceedings, acquire the use of the right of way of a railroad without the payment of any substantial damages, and could thus acquire a most valuable right practically free of cost. It therefore clearly appears that the right of way of a railroad, already cleared and so kept by the railroad company, was a most inviting field for the erection of telegraph lines, and it did not seem unlikely that in the future development of the state advantage would be taken of the situation. It may be that considerations like those above noted actuated the Legislature in enacting into law what is now section 3867 of the Code, and thus declaring that it is not the public policy of the state to condemn, for another use, property already devoted to a public use, unless an actual necessity therefor exists. The lawmaking body has spoken in emphatic terms in declaring the public policy, and it is not for us to "wander into the maze of conjecture or to search for imaginary purposes." Indeed, we are unable to see that the public good requires that the petitioner be permitted to locate its line upon the right of way of this railroad, but on the contrary, we think that the public interest is in equipoise. Petitioner went upon this right of way under contract, which contract, as we understand was conceded by counsel in argument, was terminated by the voluntary act of the petitioner. No reasons, except those of economy and convenience, appear why petitioner may not erect its line elsewhere than on this railway. If, upon petitioner's failure to acquire this right of way, and before it acquired a right of way elsewhere, the railroad company should begin at once a destruction of petitioner's telegraph line, it may be that a court of equity, on account of, and for the conservation of, public interests might enjoin such act of destruction pending the acquirement of a right of way elsewhere within a reasonable time. This, of course, need not be determined here. But the situation thus presented, brought on by the voluntary act of petitioner, clearly can afford no foundation for the argument that an actual necessity existed for the condemnation of the railroad right of way.

We have dealt with the one question which we deem of vital importance on this appeal and as conclusive of the result thereof. It is therefore unnecessary to enter into a consideration of

whether or not the condemnation here sought was upon the margin of the right of way, or whether, if judgment of condemnation were entered, more than nominal damages should have been assessed. These were questions of secondary consideration, and are unnecessary to be here determined.

This cause was tried, in so far as the evidence of the petitioner is concerned, in conformity with the former opinion in this case. The trial judge, although entertaining a contrary view as to the law, followed in his rulings upon this question the holding of this court on the former hearing, which of course was entirely proper. While the record before us, under the view we now entertain of the case, would justify a final disposition of the cause on this appeal, yet, in view of this situation, we have concluded to remand the cause.

The former opinion was not decided by the full court, the then Chief Justice being absent and Mr. Justice SAYRE dissenting. The writer of this opinion and Mr. Justice THOMAS were not then members of this court. As presently constituted, the court has reached the conclusion that the former holding was erroneous.

We are fully mindful of the importance of this holding, both to the parties and to the public; but it is our sole duty to declare the law as we find it. The case of *W. U. T. Co. v. S. & N. R. R. Co., supra,* is therefore overruled, and the judgment of the court below will be reversed, and the cause remanded.

Reversed and remanded.

MAYFIELD, SAYRE, and THOMAS, JJ., concur. ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., dissent.

SAYRE, J.— (Concurring.)—I am not prepared to say that the action of the Legislature, or its lack of action, in reference to the bill to amend section 3 of the act to amend certain sections of the Code of 1896, should have any influence in the decision of this case. I place my concurrence upon the other considerations stated in the opinion. In this Mr. Justice THOMAS also agrees.

ON APPLICATION FOR REHEARING.

GARDNER, J.—(1) Upon this application for rehearing counsel for appellee, for the first time during this litigation, it

would seem, insist that the proceeding brought against the appellant was not for the purpose of acquiring an easement in the right of way, but was merely to ascertain the amount of compensation which should be paid therefor. This theory rests upon the assumption, on their part, that the appellee already owned a perpetual easement on the right of way by virtue of the contract of 1884. By what is here said we do not intend to indicate that such theory would support a condemnation proceeding. That might be conceded, for the sake of argument and for that purpose only, but we pass that question by as unnecessary to be determined. There is no intimation in the entire record that such a theory was even hinted at on the former trials of this cause, and the former opinion in the case discloses no such intimation upon the first appeal. This court, so far as cases of this character are concerned, is a court of review only, and is expected to pass only upon questions arising in the court below.

(9) The petition filed in this cause, seeking a condemnation of the right of way, conceded that the appellee went upon and occupied the right of way under a contract, soon to expire and is disclosed by the following quotation from section 1 thereof: "Your petitioner has for many years, to wit, 20 years, occupied the right of way of the Louisville & Nashville Railroad Company, with its lines of telegraph, consisting of poles, wires, appurtenances and fixtures, under a contract with the said railroad company, which will expire on or about the 17th day of August, 1912; and your petitioner desires to continue to occupy said right of way and maintain and operate its said lines of telegraph where they are now placed and located," etc.

But notwithstanding this question is presented now for the first time, in view of the carefully prepared briefs of the able and diligent counsel for appellee, we have deemed it proper to give it consideration.

This record shows, indeed the petition itself discloses, that appellee went upon the right of way of appellant under contract of 1884. The opinion in this cause recited that it was conceded by counsel in argument that the contract was terminated by the act of the petitioner. This was in accordance with the very terms of the contract, which provided a continuation of the same for a period of 25 years, and that at the expiration of said period

[Louisville & Nashville R. R. Co. v. Western Union Telegraph Co.]

either party thereto might terminate the contract on giving one years' notice. There is nothing in the contract giving a perpetual easement to the appellee, and nothing that would lead thereto by necessary implication. No such insistence was made by counsel in their former brief, but on this appeal, in one of their briefs, they referred to the contract in the following language: "We then have left a working agreement which, by its terms, implies a permissive occupation of the property for telegraph purposes, possibly something in the nature of a tenancy at will."

.It is thus seen that there was no contention that by the contract a perpetual easement was granted. Section 3 of the petition avers the ownership by the railroad of the easement sought to be condemned.

But we need not pursue the subject further. The contract was terminated according to its terms, and terminated in its entirety. No effort seems to have been made—and we do not see how it could have been made—to terminate that part of the contract which is burdensome and retain that which is beneficial.

As an exhibit to the last brief filed by appellee, there is attached the opinion of the United States District Court for the Southern District of Georgia, recently delivered in the case of *W. U. Tel. Co. v. Ga. R. R. & Banking Co.* (D. C.) 227 Fed. 276, and counsel seem to be impressed with the idea that that decision lends color to the theory now advanced. The statement of facts, as well as the opinion itself show, however, that the telegraph company in this instance had acquired by contract a perpetual easement in the right of way. We quote from the opinion as follows: "A reading of these two contracts discloses beyond question that the predecessors of the Western Union Telegraph Company were granted perpetual easement in and upon the rights of way of the said railroads for the construction, maintenance, and operation of telegraph lines on same, and that such grants became irrevocable and assignable upon the construction of said telegraph lines as long as same should be kept in operation."

A reading of the case therefore discloses that it is easily differentiated from the one here under consideration. We are therefore not at all impressed with this last theory of counsel for appellee, and the application for rehearing will be overruled.

MAYFIELD, SAYRE, and THOMAS, JJ., concur.